John D. Bowling, Plaintiff in Error, *v.* Jilson P. Harrison.

Where the holder of a protested note and the party entitled to notice reside in the same city or town, notice should be given to the party entitled to it, either verbally or in writing, or a written notice must be left at his dwelling-house or place of business.

The term "holder" includes the bank at which the note is payable, and the notary who may hold the note as the agent of the owner for the purpose of making demand and protest.

A memorandum upon the note, that the "third indorser, J. P. Harrison, lives at Vicksburg," was not sufficient to go to the jury as evidence of an agreement upon his part to receive notice through the post-office.

This case was brought up by writ of error from the Circuit Court of the United States for the Southern District of Mississippi.

It was a suit by the indorsee of a promissory note against the indorser.   Bowling, the indorsee, lived in Maryland, and Harrison, the indorser, in Mississippi.

The note was as follows: —

$ 5,800.                         *Vicksburg, November*, 26, 1836.

Two years after date, I promise to pay to the order of W. M. Pinckard five thousand eight hundred dollars, for value received, negotiable and payable at the office Planters' Bank, Vicksburg.

(Signed,)                                A. G. Creath.

Indorsed : — "Pay Pinckard and Payne, or order. W. M. Pinckard." "Pay J. P. Harrison, or order. Pinckard and Payne." "Pay John D. Bowling, or order. J. P. Harrison."

At the foot of said note, and on the face thereof, was the following memorandum : — " Third indorser, J. P. Harrison, lives at Vicksburg."

At May term, 1840, suit was commenced by Bowling against Harrison, and the cause came on on for trial at May term, 1842. The jury, under the instructions of the court, found a verdict for the defendant, when the following bill of exceptions was taken by the counsel for the plaintiff.

## Bill of Exceptions.

The plaintiff proved, by Alexander H. Arthur, a witness, who was sworn, that said memorandum was in the handwriting of the defendant, J. P. Harrison, and thereupon said memorandum was read to the jury. The plaintiff then proved, by said Arthur, that said note was deposited in the office of the Planters' Bank at Vicksburg, Mississippi, on the 29th day of November, 1838, for collection, and that on that day, the 29th day of November, 1838, he demanded payment thereof of the teller of said bank, who refused to pay the same ; that on the same day he deposited in the post-office at Vicksburg a written notice of the non-payment of said note, directed to said defendant, Jilson P. Harrison, informing him of the non-payment of said note. The said witness further stated, that he acted as the agent of the Planters' Bank in making demand of payment, and giving notice of non-payment of said note. Said witness further stated, that Jilson P. Harrison, the defendant, lived in the town of Vicksburg, in which is and was the office of the Planters' Bank, when the note sued on was payable at the date of the maturity of said note. That for several years prior to the maturity of said note, it had been the usage of the Planters' Bank of Vicksburg to have notice served personally upon the indorsers resident in Vicksburg, unless there was a memorandum on the note appointing some place at which notice would be received ; and if there was a memorandum on the note designating a place where notice was to be served, then the notice was left at such place. That this usage applied to notes discounted or deposited in bank for collection. That the language of these agreements was generally as follows : — "Indorser will receive notice at Vicksburg post-office," &c., though sometimes they were in the language of the one attached to the note sued on ; that seeing the defendant's name written at the foot of this note sued on, he supposed it to be an undertaking on his part to receive notice through the Vicks-

burg post-office according to the usage of the bank, and accordingly gave him notice of the non-payment of the note, by depositing the same in the Vicksburg post-office, addressed to him at Vicksburg, and that he gave no other notice of the non-payment of the note to defendant. This being all the evidence in the cause, the court instructed the jury, that to charge an indorser, if he lived in the town in which the note was made payable, the notice must be personal, unless he had agreed to receive it elsewhere, or unless, by the custom and usage of the bank at which the note is made payable, notice of non-payment was left at the post-office. That the memorandum attached to the note sued on was not a sufficient agreement to receive notice at the post-office, and dispense with personal service on the indorser. The court further instructed the jury, that the custom and usage of the bank, as proved in this case by the witness, Arthur, was not sufficient to dispense with personal notice. To which opinion of the court, the plaintiff, by his attorney, excepted before the jury retired from the box, and presented this his bill of exceptions, and prays that the same be signed, sealed, enrolled, and made a part of the record in this cause, which is done accordingly.

J. McKINLEY. [SEAL.]

Upon this exception the case came up to this court.

It was argued by *Mr. Jones*, for the plaintiff in error, and by *Mr. Crittenden* and *Mr. Fendall*, for the defendant.

*Mr. Jones*, for the plaintiff in error.

The single objection, and the only question raised in the court below, turned on the point of diligence in the matter of serving the notice on defendant.

Upon this evidence, the court below delivered the following instructions to the jury : —

1. " That to charge an indorser, if he lived in the town where the note was payable, the notice must be personal, unless he had agreed to receive it elsewhere ; or unless, by the custom and usage of the bank where the note was payable, notice was left at the post-office."

2. " That the memorandum attached to the note in this case was not a sufficient agreement to receive notice at the post-office, and to dispense with personal service on the indorser ; and that the custom and usage of the bank, as proved in this case, was not sufficient to dispense with personal notice."

Against these instructions the plaintiff contends, —

1. That the rule, allowing service of the notice through the

Bowling v. Harrison.

post-office, is quite erroneously enunciated in the first of said instructions; which vitiates that mode of service, because the indorser lived in the same town where the note was payable. He insists, that, as the indorser and indorsee had their separate residences in different towns and States, the precise relations between the parties existed, and all the circumstances concurred, which were proper and necessary to bring the case within the very terms of the rule allowing service of the notice through the post-office; that the post-office at Vicksburg, where the indorser lived, was the proper and only post-office to which the notice could have been sent for delivery, within the terms of the rule; and that the circumstance of the bank where the note was payable happening to be situate in the same town was utterly immaterial.

2. Had it been necessary (and we hold it clearly unnecessary) to invoke the aforesaid memorandum and the bank usage in support of the notice through the post-office in this case, then we should insist that the aforesaid memorandum, with the aforesaid evidence of the bank custom and usage, was sufficient and proper to be left to the jury as evidence, to be weighed and considered by them, of the defendant's consent to waive personal service of the notice, and to receive it through the post-office; consequently, that such evidence was far too peremptorily ruled out, and the instructions so ruling it out trenched very far within the true boundaries of the jury's province and function.

*Mr. Crittenden,* for the defendant in error, said that it was not proved where the plaintiff lived; but the place of his residence was a matter of no consequence. The rule as to parties referred to the parties to the note, and not parties to the suit.

For the insufficiency of the notice, he referred to Bank of Columbia v. Lawrence, 1 Peters, 583; Williams v. Bank of the United States, 2 ib. 101; Wilcox, &c. v. McNutt, Howard, Miss. Rep. 776; 6 ib. 615; Ireland v. Kip, 10 Johns. 490; 11 ib. 231; Smedes v. Utica Bank, 20 ib. 372; 7 Howard, Miss. Rep. 565.

With respect to the rule having been dispensed with by agreement of parties, it is evident that the person who gave the notice was misled. He supposed that it was an agreement that it should be sent through the post-office; but it cannot be so construed, nor would a jury be justifiable in putting such a construction upon it. The court, therefore, was right in withholding the evidence from the jury.

*Mr. Fendall*, on the same side.

In this case, two questions are presented by the record. The first is, Was the notice sufficient in law? The second is, If the notice was not sufficient in law, is it made sufficient by any lawful usage, or by any agreement between the parties?

As to the first question: — It is not denied, on the other side, that where the party entitled to notice and the holder reside in the same place, notice must either be given to the party entitled to it personally; or must be left at his dwelling or place of business. But, it is said, in this case, Bowling, the holder, resided in Maryland, and Harrison, the party entitled to notice, at Vicksburg; and that, the parties thus residing in different places, the notice sent through the post-office is sufficient.

It is a good answer to this, that the record does not show that Bowling and Harrison did reside at different places. It describes Bowling as a "*citizen* of the State of Maryland," which he may have been, and yet have been *residing* at Vicksburg when the note was dishonored. The judicial presumption arising from the record is, that he was then residing at Vicksburg. A fact so important, according to the argument on the other side, as his residence at a different place, and so capable of being proved, would, it may be fairly supposed, have been proved, if it existed.

But another and a conclusive answer is, that the Planters' Bank, the agent for collecting the note, was in Vicksburg, the place where Harrison resided. The note was made payable at the Planters' Bank at Vicksburg, where it was the duty of the holder to be, and demand payment. He was there, either personally or by his agent, who resided in Vicksburg, and did demand payment at the bank. The notice given by the collecting bank, being an act within the scope of its agency, was the act of Bowling, the holder of the paper. "For all the purposes of the law, the agent or banker is, in such cases, treated as substantially a distinct and independent holder. Indeed, upon any other ground, it would be impracticable for the real holder, in many cases, to make due presentment, and give due notice of the dishonor of the note, so as to charge the antecedent indorsers, especially if he lived at a distance from the place where the presentment and dishonor took place." Story on Promissory Notes, § 326, 2d ed.

The general rule on the subject of notice is so well settled, that, even were it merely arbitrary, public policy and commercial convenience require that it should be strictly observed. But it is not arbitrary. It rests on a sound principle. "The object of the notice is to afford an opportunity to the drawer to obtain security from those persons to whom they are enti-

Bowling v. Harrison.

tled to resort for indemnity." 3 Kent's Comm. 107 (2d ed.). It follows, as a corollary to this proposition, that the notice should be early, and either personal to the party entitled to it, or sent to the place where he is most likely to receive it promptly. As he is presumed to be habitually at his dwelling and place of business, and may not go or send regularly to the post-office, a notice left at one or the other of the former places is more likely to reach him, and to reach him promptly, than when left at the post-office. Hence the general rule, that the notice must either be personal, or be left at the dwelling or place of business of the party noticed. "The law," says Judge Story, "requires that the notice should be either personal, or at the domicile or at the place of business of the indorser, *so that it may reach him on the very day on which he is entitled to notice.*" Story on Promissory Notes, § 322. So far is the doctrine carried in England, that notice must be given at the earliest moment, "*omissis omnibus aliis negotiis,*" and so as, if practicable, to be actually received, that, " in some cases where the indorser's residence is unknown, but he is known to resort during certain hours at a certain place, as at the Royal Exchange, the Bank of England, Corn Exchange, or any public office, the notice ought to be given during those hours." Chitty on Bills, 516 (8th Am. edit., ch. 10). Where the party noticing and the party noticed reside in different places, the law allows the notice to be sent by post; but one reason of this is, that, in many cases, the notice will be sooner received by post than if otherwise conveyed. The adjudged sufficiency of a notice sent through a letter-carrier or penny-post, though the parties reside in the same city or town, has been sometimes treated as a relaxation of the rule, or an exception to it. It is so, however, only apparently; the letter-carrier or penny-post being treated merely as an agent or messenger for delivering the notice. Story on Promissory Notes, § 323.

The general principle is not affected in its application to this case by the authorities cited on the other side. In the Bank of Columbia v. Lawrence, 1 Peters, 584, the question was as to the sufficiency of a notice sent by mail to a person residing in a place different from that where the demand was made. In Williams v. The Bank of the United States, 2 Peters, 101, the question was, whether notice left, under certain circumstances, at the house of a neighbour of the party noticed, was sufficient. In Miller v. Hackley, 5 Johns. 375, the parties resided in different places. So, too, in Munn v. Baldwin, 6 Mass. 316, in which it was held that notice sent by mail was sufficient; and that putting a notice in the post-office is con-

clusive evidence of notice. So, too, in Cuyler *v.* Nellis, 4 Wend. 398, 'the·parties resided in different places; and there being two post-offices in the place where the noticed party resided, having distinct designations, it was held that a notice sent by mail, and directed to him merely at .the place where he résided, was insufficient. The rule is precisely stated in the passage cited yesterday from Bayley on Bills, 276, 277 (2d Am. edit.): — " The sufficiency of a notice sent by the mail is well established in the United States, where the person to be charged resides in a different town or place from that *in which the ·presentment is made.* But where he resides in the same place, a, notice to him ,must be personal, or left at his residence or place of business." In many of the cases cited to this passage by the editor, the reasoning of the court substantially sustains the principle as stated in the text ; and ·one of them, that of Smedes *v.* Utica Bank, 20 Johns. 38?, is conceded to do ·so. In this case, it is observable that the court cite Ireland *v.* Kip, 10 Johns. 382, as affirming the rule in the terms· stated in Bay- ley. The citation is from the reporter's ·marginal statement. The *words* of the court's opinion are different. The case came again before the same court ; and they speak of the rule as, applying " where the parties reside in the same city or place.'' Ireland *v.* Kip, 11 Johns. 232. Thus it appears that in this case, as reported in 10 Johnson, the reporter correctly appre- hended the court, and that the court considered the. rule re- quiring notice to be personal, or left at the dwelling, &c., " where the parties reside in the same city or place," as being only another·form of the rule requiring the notice to be per- sonal or left at the dwelling, &c., where the party noticed re- sides in the *same place where the presentment is made.* And so Judge Story is to ·be understood in his statement of the rule. Story on Promissory· Notes, § 312 (2d edit.). Among the authorities cited by that learned judge is the passage in Bay- ley to which we have referred. In the case of· Burrows et al. *v.* Hannegan, 1 McLean, 310, cited ·by Judge Story, the ques- tion was as to the sufficiency ·of the demand. But the remarks of the court are equally applicable to the notice. In the case of the Louisiana State Bank *v.* Rowel et al., 18 La. Rep. 508, it was held, that, where the indorser lived within three miles of the post-office, notice put there was not sufficient. In that case the brief and·lucid exposition given by the court of the law merchant on the subject of notice, taken in connection with Story on Promissory Notes, as to the legal identity of the noticing party with his agent, fully sustains the rule, as we assert it. In· Porter *v.* Boyle et al., 8 La.. Rep.· 170, where the indorser resided in a. *fauxbourg* of New Orleans, notice of

protest addressed to him and deposited in the city post-office was held to be insufficient, without showing reasonable diligence in endeavouring to give him personal notice. Though the question now before the court is admitted to be one of general commercial law, unaffected by any local law of Mississippi, the cases of Wilcox & Fearn *v.* McNutt, 2 Howard, Miss. R. 776, Patrick *v.* Beazley, 6 Howard, Miss. R. 609; and Hogatt *v.* Bingaman, 7 Howard, Miss. R. 568, which were cited yesterday, have all the weight which elaborate investigation, able reasoning, and consistent adjudication can give to authority. The first of them appears to have been decided before the note in controversy was due. The decision of the highest court in the State had settled the law, so far as such a decision could settle a question not of local jurisprudence. It may be properly referred to here as an impressive, but in this instance disregarded, caution to holders of negotiable paper. In the last of the three Mississippi cases, the principle of the two preceding decisions was reaffirmed; the counsel for the holder of the paper conceding, as a rule beyond denial, that if parties live in the same town, or have a place of business therein, the notice must be personal, or at the dwelling-house or place of business; and the court say, that notice of the demand and protest of negotiable paper cannot be given through the post-office, unless the same is to be transmitted by mail. The court here substantially reassert the general principle, that the mail is a legal instrument of notice in excepted cases only. The holder is not required to give personal notice or to leave it at the dwelling, &c., where the party to be charged lives at a distance; — but if he lives in the place where the demand is made, it is as easy to take the notice to him personally, or to his dwelling, &c., as to take it to the post-office; and in such case the general rule prevails.

As to the second question: —

This point, though not pressed in argument, has not been abandoned.

The general rule as to usage is, that usage prevails only where the law is silent. Chitty on Bills, 56 (8th Am. edit.). In one of the Mississippi cases which we have cited, the court rebuke the attempts of a few notaries to set up their particular practice as a usage. Wilcox & Fearn *v.* McNutt, 2 Howard, Miss. R. 784.

But in this case the practice of the Planters' Bank in giving notices was proved to be conformable to law. The witness says, "that, for several years prior to the maturity of said note, it had been the usage of the Planters' Bank of Vicksburg to have notice served personally upon the indorsers resi-

dent in Vicksburg, unless there was a memorandum on the note appointing some place at which notice would be received." In this case, at the foot of the note were written, in the handwriting of the defendant, the words, " Third indorser, J. P. Harrison, lives at Vicksburg." This unsigned memorandum the witness " *supposed* to be an undertaking on his part to receive notice through the Vicksburg post-office," &c. The natural inference from the memorandum is exactly the reverse, namely, that the indorser, having designated the place of his residence and there stopped, expected, should the note be dishonored, the legal incident to follow of notice to himself personally, or left at his dwelling or place of business. The supposition of the witness, who appears to have been the notary employed to protest the note, was a mere guess, and a very wild one. It was not evidence. Had there been *any* evidence of an agreement on the part of Harrison to waive his legal right to personal notice, and to receive notice through the post-office, the court, we admit, ought to have let it go to the jury, whose province it is to determine on the sufficiency of evidence. But here there was *no* evidence of such an agreement, and the court, in substance, so told, and properly told, the jury. It was clearly the province of the court to determine the legal import of the written memorandum.

*Mr. Jones*, in reply and conclusion, insisted that the rule was, that, if the parties lived in the same town, the notice must be personal; but if in different towns, the post-office was the proper medium. 1 Peters, 583; 5 Johns. 584; 6 Mass. R. 315; 4 Wendell, 398, where all the cases are examined. Either Bowling or the bank must be considered as the holder of the note. If Bowling was the holder, he was entitled to have the note sent to him in Maryland, upon its non-payment, and it would then become his duty to notify the indorser, Harrison, through the post-office. But instead of this, he, through his agent, placed the notice at once in the post-office at Vicksburg. If the bank was the holder, then the case comes under the rule which requires the holder to notify the last indorser, who is then to notify the preceding one, and so on. The bank should, therefore, in this case, also have sent a notice to Bowling in Maryland, whose duty would have been to notify Harrison through the post-office. But why not take a short cut?

It is said that Bowling's residence is not proved. But the declaration avers it, and it is too late now to doubt it.

Mr. Justice GRIER delivered the opinion of the court.

The first assignment of error in this case is to the instruc-

tion given by the court to the jury, — " That, to charge an in-dorser if he lived in the town in which the note was made payable, the notice must be personal, unless he had agreed to receive it elsewhere, or unless, by custom and usage of the bank at which the note is payable, the notice of non-payment was left at the post-office."

As the only question on the trial of the cause was the suf-ficiency of notice left at the post-office at Vicksburg to charge an indorser residing there, and not whether a copy left at his dwelling-house or place of business would be proper, the phrase " personal notice " was evidently intended and under-stood to include the latter in opposition to the former. This instruction is, therefore, not objected to on the ground of any inaccuracy of expression on that point. But the complaint is, that the rule of law on this subject was erroneously enunci-ated by the court, in stating the conditions under which a per-sonal service of notice on an indorser is required to be " resi-dence in the town where the note was made payable."

It is true, the terms in which the rule of law on that subject is usually stated differ from those used by the court on this occasion. In Williams v. United States Bank, 2 Peters, 101, it is thus stated by this court : — " If the parties reside in the same city or town, the indorser must be personally noticed of the dishonor of the bill or note, either verbally or in writing, or a written notice must be left at his dwelling-house or place of business."

Mr. Justice Story (Story on Bills, § 312) states the rule in these words : — " Where the party entitled to notice and the holder reside in the same town or city, the general rule is, that the notice should be given to the party entitled to it, either personally, or at his domicile or place of business."

The indorsee or owner of the note in this case resided in Maryland, and the indorser in Vicksburg ; and it is contended that, as they are the only parties, and do not reside in the same place, the rule is inapplicable to the case.

But we are of opinion, that, whether we regard the reasons upon which this rule is founded, or a correct construction of the terms in which it is usually stated, the instruction given by the court below was correct, and not such as to mislead the jury in the application of the law to the circumstances of the case before them.

The best evidence of notice is proof of personal service on the party to be affected by it, or by leaving a copy at his dwell-ing. Depositing a notice in the post-office affords but pre-sumptive evidence of its reception, and is permitted to be sub-stituted for the former only where the latter would be too

22 *

inconvenient or expensive. Hence, when the convenience of the public post is not needed for the purpose of transmission or conveyance, there is no reason for its use, or for waiving the more stringent and certain evidence of notice ; and therefore, in the practical application of the rule, the relative position of the *person giving the notice* and the party receiving it forms the only criterion of the necessity for relaxing it.

A very large portion of the commercial paper used in this country is similar to that which is the subject of the present suit. They are notes made payable at a certain bank. The last indorsee or owner transmits it to that bank for collection ; if funds are not deposited there to meet it when due, it is handed to a notary or agent of the bank, who makes demand and protest, and gives notice of its dishonor to the indorsers ; if they live in the same town or city where the bank is situated and the demand made, and " *where the note was payable,*" he serves it personally, or at their residence or place of business ; if they live at a distance, so that such a service would be inconvenient and expensive, he sends the notice by mail to the nearest post-office, or such other place as may have been designated by the party on whom it is to be served. This is and has been the daily practice and construction of the rule in question over the whole country, and the only one consonant with reason.

This practical application of the rule is correctly stated by the court in their instruction to the jury as connected with the circumstances of the case before them, and also within its terms as it is usually stated in the books. The term " holder " is properly applied to the person having possession of the paper and making the demand, whether in his own right or as agent for another. The Planters' Bank of Vicksburg were the " holders " of this note for collection, and were bound to give notice to all the indorsers. (Smedes *v.* The Utica Bank, 20 Johns. 372.) The notary, also, who held the note as agent of the owner for the purpose of making demand and protest, may be properly considered as the " holder " within the letter and spirit of this rule. On a careful examination of the very numerous cases in the books in which the rule under consideration has been enunciated in the terms above stated, they will be found not essentially to differ from the present in their circumstances. In some instances, also, the rule has been stated in the terms used by the court below. (See Bayley on Bills.)

An exception is taken, also, to the instruction of the court, — " That the memorandum attached to the note in this case was not a sufficient agreement to receive notice at the post-office,

and to dispense with personal notice on the indorser; and that the custom and usage of the bank, as proved in this case, were not sufficient to dispense with personal notice."

The memorandum is in the following words : — ".Third indorser, J. P. Harrison, lives at Vicksburg." The only direct evidence of usage was, " that, for several years prior to the maturity of said note, it had been the usage of the Planters' Bank of Vicksburg to have notice served personally upon the indorsers resident in Vicksburg, unless there was a memorandum on the note designating a place where notice was to be served; then the notice was left at such place." This is, in fact, no usage peculiar to Vicksburg, but the general rule of commercial law. The notary appears to have mistaken this memorandum for an agreement to receive notice at the Vicksburg post-office; and, however willing to excuse himself, he has not ventured to swear directly that there was any known usage to justify this construction, or rather misconstruction, of this memorandum. The counsel for plaintiff in error complain that the court did not submit it to the jury to say whether an inference might not be drawn, from some equivocal or obscure expressions of the witness, that there was such a usage.

It is true, the jury are the proper judges of the credibility and weight of testimony, but the court should not instruct them to presume or infer important facts, unless there be testimony which, if believed, would justify such a conclusion.

It is of the utmost importance to commercial transactions, that the rules of law on the subject of notice which is to charge an indorser be stable and certain, and not suffered to fluctuate and vary with the notions or caprice of banking corporations or village notaries. A usage, to be binding, should be definite, uniform, and well known. It should be established by clear and satisfactory evidence, so that it may be justly presumed that the parties had reference to it in making their contract. Every day's experience shows, that notaries, in many places, fall into loose ways of performing their duties, either through negligence or ignorance; and courts should be cautious how they encourage juries to presume usages and customs contrary to the settled rules of law, in order to sanction the mistakes or misconceptions of careless or incompetent officers. It was as easy to have written the memorandum on this note, " The indorser, J. P. Harrison, agrees to receive notice at the Vicksburg post-office," as to write it .in its present form; and one can hardly conceive of the possibility of a well-known and established usage, that a written memorandum should be construed without any regard to its terms or plain meaning. Those who affirm the existence of such a strange usage should be held to

strict proof of it; and the court were right in not submitting it to the jury to infer such an improbable and unreasonable custom, by forced or astute construction of equivocal expressions from a willing witness.

Let the judgment be affirmed.

### Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Southern District of Mississippi, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be and the same is hereby affirmed, with costs.