## FAHNESTOCK *et al.* v. SMITH *et al.*

1. PROTEST: NOTICE. The indorser of a promissory note, payable at a certain banking house in C, resided in the same place; on the date of the maturity of the note (November 21st, 1859), it was duly protested for non-payment at said banking house by a notary residing at L, two miles distant. Instead of notifying the indorser personally, or by notice deposited in the post office at C., he returned to L, made out the notice, and deposited it in the post office at L, when it would not be received by the indorser at C, by due course of mail, before the 23d day of November, or on the third day after protest. It was held, that the notice was not sufficient to charge the indorser.

2. STATUTE CONSTRUED. Section 213, Revision 1860 ("an act regulating the mode of service of notices of protest by notaries public"), considered and construed.

*Appeal from Clinton District Court.*

WEDNESDAY, APRIL 15.

On the 17th day of November, 1858, Eliza A. Toll made her promissory note, payable to Milo Smith, at the banking house of Green, Dakin & Co., in Clinton. On the 21st day of November, 1859 (the 20th being Sunday), a notary residing in Lyons (two miles from Clinton, the place of payment), presented the note at the banking house of Green, Dakin & Co., and demanded payment, which was refused. The notary, instead of notifying the defendant personally or by notice deposited in the post office at Clinton, returned to Lyons and deposited the notice in the post office at that place, when, by due course of mail, it could not be delivered to the defendant at Clinton until Wednesday, the 23d day of November, on the third day after the protest. Both the defendant and the maker of the note resided in Clinton. Judgment for the defendant, and the plaintiff appeals.

A. R. *Cotton* for the appellant, cited *Williams* v. *The United States Bank*, 2 Pet., 101; Story on Bills, 312; Edwards

on Bills, 474; *Butler* v. *Duval*, 4 Yerg., 265; *Clow et al.* v. *Bailey*, 12 Mees. & W., 51; *Langdale et al.* v. *Trimmer*, 15 East., 291; *Scott* v. *Lifford*, 9 Id., 347; *Colt et al.* v. *Noble*, 5 Mass., 167; Chitty on Bills, ch. 10, p. 518 (8th ed.); Bailey on Bills, ch. 7, § 2; *Crosse* v. *Smith*, 1 Maule & Selw., 545; *Bank of Columbia* v. *Lawrence*, 1 Pet., 582; *Seneca County Bank* v. *Neass*, 5 Denio, 330.

*Cook & Drury* for the appellees, cited *Bowling* v. *Harrison*, 6 How., 248; *Smedes* v. *The President and Directors of The Bank of Utica*, 20 John., 371; *Ireland* v. *Kip*, 10 John., 489; *Cuyler* v. *Nellis*, 4 Wend., 398; *Ransom* v. *Mack*, 2 Hill, 587; *Shed* v. *Brett*, 1 Pick., 401; *Remington* v. *Harrington*, 8 Ohio, 107; *Miles* v. *Hall*, 12 Smedes & M., 322.

Lowe, J.—The only point of controversy is, whether a notice of protest, given under the circumstances stated, is sufficient in law to hold the indorser. The court below held that it was not. In this opinion we concur. The undertaking of the indorser is, that he will pay the note if the maker does not, provided the holder (and this comprehends the agent whom the holder may employ for that purpose), shall give him timely notice of non-payment by the maker. The question, then, is, did the notary pursue such a mode in giving notice of non-payment to the indorser Smith as the law authorizes and requires.

In examining the various authorities referred to by counsel on both sides, we confess to some confusion in the cases, and in the language of the courts, in stating the rule to be observed as to the manner in which a notice is to be given, when the indorser, or party to be charged, resides in the same place where the note is payable, and has been dishonored for non-payment.

Without at this time reviewing and deducing the rule which we think the current of authorities establishes, as applicable to the case at bar, we shall, for the present, con-

tent ourselves in adopting and applying the rule fixed by the Legislature of the State, and which we think prescribes the particular mode of giving the notice required in a case like the one before us, and to that extent supplies the proper test of due diligence.

The statute referred to in § 213, Revision of 1860, entitled "*An act regulating the mode of service of notices of protest by notaries public,*" passed February 25, 1858, reads as follows:

"That in case of a demand of payment of any promissory note, bill of exchange, or other commercial paper, by a notary public, and a refusal by the maker, drawer, or acceptor, as the case may be, the notary making said demand may inform the indorser, or any party to be charged, if in the same town or township, by notice deposited in the nearest post office to the party to be charged, on the day of the demand, and no other notice shall be necessary to charge said party."

Now, whilst one of the purposes of the law was undoubtedly to make a notice of protest through the post office, equivalent to a personal notice, or a notice left at the dwelling or business house of the party to whom it is addressed, if living in the same town or place where the demand was made, yet it seems to have contemplated still another object, promptness of notification, by requiring not only that the notice may be deposited in the post office nearest to the party to be charged, but that it also be deposited *on the day of the demand.* It is a general rule applicable to all cases, and propounded by many authorities, that notice shall be so given, and at such place that it will be most likely to reach the indorser promptly. When, therefore, the notary, instead of observing the mode of giving the notice prescribed in this statute (whereby the indorser would, in all probability, have been informed of the protest on the same day of the demand), carried the same to a neighboring town

and then transmitted it through the post office, and which would not reach the indorser by due course of mail before the third day after the demand, he thereby did an act so much at variance with the true intendment of the above statute, as that it vitiated the notice, and rendered it ineffectual for the purpose intended. As was very well remarked by counsel, if the notary could go to the first neighboring town and there mail the notice so he could go any distance, provided he mailed the notice within the time limited by law, under which practice we can readily conceive cases where the party addressed would not receive the notice for a week or more. This rule, if recognized and sustained, would overturn the well settled doctrine which requires that an indorser shall have the most prompt notice practicable of the dishonor of a note. The matter of fact is, this statute does not essentially differ from the rules established under the law merchant on this subject, except to add one other method of serving notice of protest when the party to be affected resides in the same place where the note is payable, and the demand is made, namely, that of leaving the notice in a post office nearest to the indorser, and even this method has been upheld under commercial law by the courts, when it was shown to be in accordance with a clear custom or usage of banks. The statement of the general rule, that " when the holder and indorser, entitled to notice, reside in different towns or cities, the notice may be by post," &c., practically means this, according to the invariable rulings of the court, that whenever the indorser or party to be charged resides in a town in which there is a post office, different from that in which the note is dishon ored, it is proper to send him the notice by mail, but when he resides in the same place, a notice to him must be personal, or left at his residence or place of business, or (under our statute) deposited in the post office. In support of this will be found a very large number of authorities collected

by Parsons in the first volume of his new treatise on The Law of Promissory Notes and Bills of Exchange, on pages 487 to 498 inclusive. The particular authorities referred to by the counsel for appellee, to sustain the same rule, are Bailey on Bills, 2d Am. ed., 276, 277; *Smedes* v. *Utica Bank,* 20 John., 371; *Ireland* v. *Kiss,* 10 Id., 499; *Cuyler* v. *Nellis,* 4 Wend., 398; *Ranson* v. *Mock,* 2 Hill, 587; *Shed* v. *Brett,* 1 Pick., 411; *Remington* v. *Harrison,* 8 Ohio, 507; *Miles* v. *Hall,* 12 S. & M., 322; *Bowling* v. *Harrison,* 6 How., 248. This last authority, besides establishing the rule in question, lays down another principle of some pertinency to the case in hand, and answers one phase of the argument of the appellants. It says: " The term 'holder' is properly applied to the person having possession of the paper and making the demand, whether in his own right or as the agent of another. The notary, who held the note as the agent of the owner, for the purpose of making demand and protest, may be properly considered as the 'holder,' within the letter and spirit of the rule." The soundness of this reason is attested by the fact that the various decisions of the courts upon this subject, although not in words, have in *effect* held the same thing.

Counsel for appellants, however, strongly insists, that inasmuch as the holders (meaning Root, Bro. &· Co., who were simply indorsers for collection, and were not the owners), lived at Lyons, and Smith, the indorser to be charged, lived in a different town, to wit, Clinton; that a notice sent through the post at Lyons comes within the meaning and spirit of the rule, and should have the effect to charge the indorser; and, in further support of this position, he draws an argument analogically from the rule which obtains in cases of circuitous notices, and the question is confidently asked, if Root, Bro. & Co. had indorsed the note to Green, Dakin & Co., bankers at Clinton, for collection, and they had mail notice of protest from Clinton to Root,

Bro. & Co., at Lyons; and on receiving the same, Root, Bro. & Co. had mailed a notice from Lyons to the defendant Smith, at Clinton, whether in that event this last notice would not have been sufficient to charge Smith? We answer, certainly it would; but why? Simply by that act Green, Dakin & Co. would show that they intended to look alone to Root, Bro. & Co.; and then comes in another principle of law, in virtue of which Root, Bro. & Co. have the right to look to their indorser, or, indeed, to any prior indorser, in order to secure themselves, to do which, however, they must give the requisite notice, within the prescribed time, and when they do so the liability of the party thus notified arises from their act, and not from anything done by the last holder of the instrument. In other words, the holder of a protested bill or note has his election to look to all, or to one or more of the prior indorsers. If he intends to hold all, then he must duly notify all in the particular manner specified by the law. We have already seen that if any of them reside in the place where the note is made payable, and the demand has been made, he or they are entitled to personal notice, or that which is equivalent thereto. On the other hand, if he elects, for instance, only to hold his immediate indorser, and duly notifies him, being in this case the fourth indorser, he, the fourth, to protect himself may notify the third; and he the second, and he the first; and a liability thus established against each indorser in succession, is founded in reason and justice, and arises out of the right which the law vouchsafes to each to protect himself from loss against the others. Nevertheless, it is true that when a liability is fixed upon the first indorser, wherever he may reside, in this circuitous way, it inures to the benefit of all subsequent parties to the note. 1 Parsons on Notes and Bills, 503.

But we suppose when a holder attempts to reach a prior indorser, he must show that he has been affected with due notice of protest, either from a subsequent indorser or from the holder himself. In this case the former is not pretended, and the latter, as we have shown, was insufficient. The judgment, therefore, will be

Affirmed.