DOUGLAS, by her next friend, etc., *v.* BUTLER and another.

*(Circuit Court, D. New Jersey.   March 15, 1881.)*

1. EQUITY PRACTICE — SUIT BY MARRIED WOMAN — HUSBAND A PARTY
   TO THE SUIT.
   In a suit by a married woman, the husband should be joined in all
   cases where they have no antagonistic interests; but if it be other-
   wise, she should file her bill by her next friend, and make her hus-
   band a party defendant.
   *Birn* v. *Heath*, 6 How. 248.

2. SAME — AMENDMENT.
   Such defect of parties may be cured, however, by amendment.
   *Johnson* v. *Vail*, 1 McC. 426.

3. TAX SALE — REDEMPTION — TENDER. — [ED.

In Equity.   On Bill, etc.
*F. C. Lowthorp, Jr.*, for complainant.
*James Buchanan*, for defendant.

NIXON, D. J.   This bill was originally filed in this case by
a husband and wife against the defendant, to compel a sur-
render of the title and possession of certain real estate, situate
in the city of Camden, New Jersey, to the wife, as her sepa-
rate property; and at the outset we are met with the objection
that the bill is fatally defective for the want of proper parties.
The counsel of the defendant Butler insists that the correct
practice in equity does not allow the wife to make her hus-
band a co-complainant, but that she should have sued by her
next friend, and brought in her husband as a defendant.   The
old rule in such cases was to permit the wife to join her
husband with her in the action—although there was no
prayer for his relief—in all cases where the husband and
wife had no antagonistic interests; but where these were
likely to arise in the proceedings, the wife was required to
file the bill by her next friend, other than her husband, and
to make the husband a defendant.

This rule was expressly sanctioned by the supreme court
in *Birn* v. *Heath*, 6 How. 248, in which it is said: "Where
the wife complains of the husband and asks relief against
him, she must use the name of some other person in prose-

cuting the suit; but where the acts of the husband are not complained of, he would seem to be the most suitable person to unite with her in the suit. This is a matter of practice within the discretion of the court," etc. But the objection is not reckoned of much practical importance, as all the authorities agree that, where such a defect in the parties is brought to the attention of the court, the practice is not to dismiss the bill, but to give permission to the wife to amend by adding a next friend, and making the husband a defendant. *Johnson* v. *Vail*, 1 McC. 426.

As the learned counsel for the defendant came into the case after the final hearing, and was permitted, by the courtesy of the counsel of the complainant, to file a brief in reply to his brief, it was not, probably, within his knowledge that such permission was craved by the complainant at the hearing, and granted by the court; and that, subsequently, John Cruikshank, on his own application, was allowed to enter his name in the suit as the next friend of Mary M. Douglas—the husband, Robert J. Douglas, being made a defendant.

The bill of complaint is filed by Mary M. Douglas, by her next friend, against Dempsey D. Butler, claiming that before the first day of November, 1872, she was the owner in fee-simple of two separate tracts of real estate in the said city of Camden, with a number of tenement-houses standing thereon, of the value of $7,000 or $8,000; that, residing out of the state, she had the property placed in the hands of an agent, to lease the houses and collect the rents; that about the seventh of February, 1873, she received a letter from her agent stating that the tenants refused to pay to him any more rent, the defendant Butler having served notice upon them that he claimed the rents as the purchaser of the property on a public sale made by the city for non-payment of the taxes; that the complainant's husband, on her behalf, immediately went to the city of Camden, and had an interview with the defendant Butler, and requested from him a statement of the amount of money, including all costs and expenses, paid by him on said tax sales, with the expressed desire and purpose of paying the full amount of the claims of the defendant; and that

he refused to comply with said request, not only upon that occasion, but upon several subsequent interviews had during the months of March and April following, when he was visited for the like purpose.

The bill also alleges that on or about the fifth of May, 1873, the complainant, in company with her husband and one George Greeley, had another interview with the defendant in the city of Camden, having first obtained from the receiver of taxes a statement of the amount for which the property had been sold for taxes, and the several sums paid by the defendant, and then tendered to him in the presence of said witnesses $350, and requested him to take therefrom all sums due to him by virtue of the tax sales, and to release and surrender the said real estate, and that the defendant refused to accept the said money, or any part thereof, or to release and surrender the said property; that another tender was made to the defendant in the presence of James and Tobias Johnson about the sixth day of October, 1874, of the sum of $600, and still another of the thirty-first of October, 1874, by C. A. Bergen, Esq., on behalf of complainant, and in presence of George W. Humphreys, of the sum of $500, both of which were refused by the defendant, he alleging in both instances that the amounts so tendered were not sufficient to cover his payments and expenses, and at the same time refusing to give to complainant any statement of what sums he had paid and expended on account of the said real estate.

The bill further alleges that the complainant had been always ready and willing, and was still ready, to pay to defendant all amounts of money required to redeem said property, and prays that the defendant may be decreed to surrender the possession of said real estate and premises; to release and quitclaim all the defendant's (Butler's) right, title, and interest therein, acquired by virtue of said tax sales, and to pay to complainant an amount equal to all the rents and profits accruing and received from said real estate from February 7, 1873, in excess of the amounts for which the property was sold for taxes.

The answer of the defendant Butler, in substance, denies the title of the complainant to the real estate described in the bill, and the tenders claimed to have been made to the defendant, or, at least, their legal sufficiency. He also claims the right to continue to hold the several lots of land by virtue of certain tax titles acquired at the times specifically set forth. It is important to observe the dates when his title begins to run, as it has an important bearing upon the question of the tenders alleged to have been made at different times.

(1) The two lots on the north side of Cherry street, 60 feet front and 100 feet deep, by deed or declaration of sale dated February 27, 1862; the same being sold to the defendant for the term of 125 years for the sum of $32.50, amount due from Elizabeth Thomas, then owner, for unpaid taxes assessed thereon.

(2) Two frame houses and lots of land, situate Nos. 230 and 232 Spruce street, 60 feet in front by 200 feet, to Cherry street, by declaration of sale dated November 29, 1872; sold as the property of John S. Bundick, agent, the owner, or reputed owner, for the term of 50 years, for $41.95, the amount due for taxes, etc., for the year 1871. The half of said lot, lying on Cherry street, is the same premises as those described in the above declaration, No. 1.

(3) A lot of land at the north-east corner of Newton avenue and Chestnut street, by declaration of sale dated November 29, 1872; sold as the property of Mary M. Douglas, for the term of 15 years, for the sum of $21.03, the taxes, interest and costs for the year 1871.

(4) One other lot of land, situate at the north-east corner of Chestnut street and Newton avenue, triangle, by deed dated March 27, 1873; sold as the property of Mary M. Douglas, for the term of 300 years, for $9.45, the amount due for culvert assessment for the year 1870.

(5) One other lot, situate as aforesaid, 100 feet on Newton avenue and 75 feet on Chestnut street, by deed dated February 27, 1874; sold as the property of Mary M. Douglas, for the term of 100 years, for $22.79, due for taxes, etc., for the year 1872.

(6) A lot of land at the north-east corner of Chestnut street and Newton avenue, triangle, by deed dated October 26, 1876; sold as the property of Mary M. Douglas, for the term of two years, for $18.71, for taxes, etc., due for the year 1874. This appears to be the same lot as No. 4, above described.

(7) Three frame houses and lots of land, situate at Nos. 1020, 1022, and 1024 Newton avenue, by deed dated November 29, 1872; sold as the property of Mary M. Douglas, for the term of one year, for $36.90, due for taxes, etc., in 1871.

(8) The same lots lastly described, by deed dated March 27, 1873; sold as the property of Mary M. Douglas, for the term of 300 years, for the sum of $17.40, the amount due on assessment for culvert in 1870.

(9) The same lots, by deed dated October 26, 1876, again sold as the property of Mary M. Douglas, for the term of two years, for $36.29, amount of taxes, etc., in 1874.

(10) A lot of land on the west side of Broadway, 40 feet north of Chestnut street, being 98 feet in front and 60 feet in depth, by deed dated January 2, 1873; sold as the property of Mary M. Douglas, for the term of 90 years, for $41.25, taxes assessed for the year 1871; and again sold October 26, 1876, as the complainant's, for the term of two years, for $40.31, amount of taxes, etc, for the year 1874.

The defendant further claims that he has paid for taxes and assessments, on the several lots thus held by him, as follows: On the twelfth of January, 1874, to A. Hugg, city solicitor, $32.77, for taxes on the lots described above, in No. 7, for the year 1872; and on the twenty-first of January, 1874, the further sum of $4.30, for culvert assessment. On the first of August, 1874, to A. C. Jackson, receiver of taxes, $21.84, the taxes on Nos. 1 and 2 for 1874, less 5 per cent. for prompt payment; and on the twenty-second of September, 1874, to A. Hugg, city solicitor, the further sum of $36.77, the taxes assessed on the same property in 1873. On the twelfth of January, 1874, to A. Hugg, city solicitor, $36.56, for taxes, etc., for 1872, on the above-described lot in No. 10. On the twelfth of January, 1875, to A. Hugg, city solicitor, $17.59,

for taxes and costs for 1872 on the real estate described in 3, 4, 5, and 6, at north-east corner of Newton avenue and Chestnut street. On the twelfth of January, 1874, to A. C. Jackson, tax receiver, $58.25, taxes on all the above-described lots, except Nos. 1 and 2, for the year 1873. On the twenty-first of April, 1874, to Alfred Hugg, solicitor, $72.58, for paving Newton avenue, between Broadway and Chestnut, including interest, costs, and expenses.

The defendant, in his answer, further avers that he has always been ready and willing, and is now ready and willing, to surrender all right and claim to the said real estate to the owners thereof, upon being re-imbursed the purchase money paid by him to the city of Camden, and interest at the rate of 12 per cent. per annum, and all expenses and charges necessarily incurred in regard to said property.

After such voluntary offer by the defendant not much remains to be done in the case except to ascertain (1) who are the owners of the real estate in controversy, and (2) what sum remains due to the defendant for the money paid for taxes and assessments.

As to the first question, the evidence shows clearly that the complainant, Mary M. Douglas, is the owner. She puchased the lots on Spruce and Cherry streets of James H. Tucker and wife, by deed dated September 8, 1868, and duly recorded, in which the grantor claims to have been the son and only heir at law of his father, Samuel Tucker, the former owner. There is nothing to impeach this title except the allegation of the defendant Butler that the said James once told him that he was not the son of Samuel, and that his only heir at law was a niece, one Mary Laurens. All the testimony upon the subject is mere hearsay, which has no weight against the *prima facie* evidence of the deed. James H. Tucker was within reach of the defendant, who ought to have proved the allegation by him, if it were a fact capable of proof. She became the purchaser of the lots at the corner of Newton avenue and Chestnut street by deed from Edward Miller and wife, dated December 7, 1858, and duly recorded. There was an attempt to invalidate this title by alleging that

the real estate was in fact the property of the complainant's husband, Robert J. Douglas, although the deed had, for fraudulent purposes, been taken in the name of the wife; that it had been seized under a writ of foreign attachment issued against the husband for his debts, and his interest therein sold by auditors appointed in the attachment proceedings, and a title given to other parties. But there was no evidence to support these allegations in regard to the ownership of the husband, and it is hardly necessary to say that the wife's title cannot be successfully defeated, except by some proceeding in which she is a party, and has the right and opportunity to be heard.

We are, then, brought to consider whether the complainant, as owner, has the right to redeem the property described; and, if so, what amount of money is necessary to be paid for the redemption. The sixty-fourth section of the act to revise and amend the charter of the city of Camden, approved February 14, 1871, (Pam. L. 1871, p. 210,) makes all taxes and assessments a lien upon the real estate for five years after the same shall have been assessed, and authorizes the city council, on failure of the owner to pay and satisfy the full amount of such tax or assessment, to sell the premises at public auction for the shortest time, not exceeding 100 years for unimproved property, and 50 years for improved property, and to execute, under the seal of the city, a declaration of sale to such purchaser. The sixty-fifth section reserves to the owner the right of redemption, within two years from the date of sale, on the payment of the purchase money, with interest at the rate of 12 per cent. per annum, to be computed from the day of sale, and all the expenses and charges necessarily incurred thereon by the purchase aforesaid.

The bill of complaint contains several vague allegations about tenders by the husband of the complainant in her behalf, but only two are specifically stated,—one on the fifth of May, 1873, and the other on the thirty-first of October, 1874,—both of which are within two years of the date of sale of all the property, except the lot on Cherry street, which the defendant claims to have purchased February 27, 1862,

on a tax sale for taxes assessed against one Elizabeth Thomas. But the evidence clearly shows that the former owner redeemed the lot some years before the complainant became the purchaser, and that the fraudulent claim of the defendant has been made possible by the fact that Butler has become the administrator of the estate of Elizabeth Thomas, and as such has and keeps control of the papers, which prove that the lot was duly redeemed.

The tenders, then, being in time, were they legal in form and sufficient in amount? I do not inquire into the tenders which the testimony shows were made in the presence of the two brothers, James and Tobias Johnson,—the first, of $350, in the month of February, 1873, and the second, of $600, on the sixth of October, 1874,—because the proof cannot be broader than the allegations of the bill, and I am not able to find anything in the bill, in regard to tenders at those dates, definite enough to put the defendant upon his defence. But the complainant charges that on the fifth of May, 1873, she and her husband and one George Greeley found the defendant in the city of Camden, and then and there counted out to him $350, and requested him to take from that sum enough to re-imburse himself for the money he had paid for taxes and assessments on the real estate of the complainant, which he then held by tax title, and that the defendant declined the offer, assigning, as his only reason, that the sum was not enough; and that on the thirty-first of October, 1874, she again tendered to him $500, by the hands of her authorized agents, C. V. Bergen and George W. Humphries, which was also rejected. Both of these tenders are proved by the parties who are stated to have witnessed or participated in them. Not only were the tenders legal, but the amounts were amply sufficient for any sums due when they were respectively made. It requires no very serious analysis of the dates of the purchases and payments, as claimed by the defendant in his answer, to prove this. Less than $200 were due him in May, 1873, when he refused $350 as insufficient; and if the $500 tendered in October, 1874, should be applied to lawful purchases and payments after May 5, 1873, such sum was

largely in excess of any amount that the defendant had expended for taxes and assessments paid since that date. There must, therefore, be a decree for the complainant, with costs, and a refererence to a master for an account.

Unless it can be satisfactorily shown that the defendant is pecuniarily responsible for the rents that are accruing, I will, on the application of the complainant, appoint a receiver to collect them, and to take charge of the property during the accounting.

I infer from the testimony of the defendant himself that he has allowed the premises to get sadly out of repair. It is rarely that a case falls under the observation of the court where the conduct of the defendant has been more unconscionable. Since he became the purchaser his whole thought, evidently, has been to perpetuate his control. He has allowed the taxes for which he was responsible to remain unpaid from year to year, and has caused the property to be sold and resold for their payment, and in all cases has become the purchaser for longer or shorter periods of time, as if by such methods he could increase the sums to be paid for the redemption of the premises. He must be held accountable for the rents and income since the tender, if not for what the property would have produced with reasonable and proper diligence. The order of reference should direct the master to ascertain and report, not only the amounts and dates of payments of the defendant on account of the property, but also the particular years for the non-payment of the taxes of which the real estate was sold; and, further, the amounts and dates and receipts of rents from the respective lots.