Argued 21 February, decided 24 April, 1905.

## WELCH *v.* KINNEY.

80 Pac. 648.

NOTES—ACTION BY AGENT AGAINST HIS PRINCIPALS.

1. Where a number of persons not incorporated, and not organized so as to become a legal entity, jointly own a note made by one of them, an agent of them all cannot sue on such note under an assignment for collection, since in such a case the maker would be suing himself through his agent.

OWNER OR HOLDER OF NOTE.

2. The holder of a note is one who has possession of it and is demanding payment, but such a person is not necessarily the owner, so a finding only that one is the holder of a note is equivocal.

From Multnomah: ALFRED F. SEARS, JR., Judge.

Statement by MR. CHIEF JUSTICE WOLVERTON.

This is an action by James W. Welch against M. J. Kinney, based upon a promissory note executed by the defendant to G. Wingate, and contains, among other usual allegations, the following: "That said note has been, for a valuable consideration, duly assigned to this plaintiff, and that plaintiff is now the owner and holder thereof." The answer denies every material allegation, except, perhaps, the sheer execution of the note on the part of the defendant, and sets up three separate defenses. These latter are not material to the questions involved. The case was tried before the court, a jury having been waived, which made findings of fact responding specifically to all the allegations of the complaint, except it found that the plaintiff was the holder of the note, omitting reference to ownership; to which findings the defendant duly excepted on the ground that they and each of them were not supported by the evidence. Judgment having been rendered on the findings in favor of plaintiff, the defendant appeals.　　　　　　　　　　　REVERSED.

For appellant there was a brief over the names of *Edward Byers Watson* and *George Hannibal Durham,* with an oral argument by *Mr. Watson.*

For respondent there was a brief and an oral argument by *Mr. Frank J. Taylor.*

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

The facts material to the controversy are, in substance, these: On March 30, 1895, Alfred Kinney and 20 others, styled

the "Committee of Direction," entered into a written agreement with A. B. Hammond, whereby they agreed to procure for him the right of way, free of expense, in consideration that he would construct a railroad from Goble to Astoria, in Oregon. This Committee of Direction, through the instrumentality of Wingate, one of its members, and others acting in its behalf and for the promotion of its purposes, procured many subscriptions of money and property to be used in securing the right of way, and, among others, procured the note of the defendant, being the one in question, to be executed to Wingate personally, the same representing the maximum amount which defendant should be called upon to contribute to said committee. Hammond not being fully satisfied with the arrangements with the Committee of Direction, another committee was formed, known as the "Guaranty Bond Committee," consisting of 25 persons, the defendant being one of them, who guaranteed to Hammond the right of way desired for his road, which they did in consideration, among other things, that the Committee of Direction would assign, set over, and transfer to them all the subscriptions to the right of way theretofore acquired. This was accordingly done, the makers of the subscription notes and checks and other forms of subscription joining in a written request and authorization to the payees to deliver the same to such bond committee, and further authorizing the committee to use them for the purpose for which they were designed. Thus it is that the bond committee acquired its right and title to the note in suit. To this point there is no objection to any phase of the transaction, and it is conceded that the title and right to enforce collection was perfectly vested in the bond committee.

On September 3, 1895, at a meeting of the bond committee, a resolution was adopted whereby the president, secretary, and vice president were constituted an executive committee, with "full power to act in all matters pertaining to the rights of way; * * also with power to negotiate and sell notes or paper owned by this committee." On November 15, 1898, the committee authorized the executive committee to collect all the additional notes and the "Thompson subscription notes" by suit

or otherwise, and on December 2 authorized such executive committee to proceed to collect all assets. The defendant was present at each of these three meetings of the bond committee. On April 7, 1902, at a meeting of the executive committee, it was resolved "that all notes, bonds, and other indebtedness due and owing to the Guarantee Bond Committee be, and the same are now, sold and assigned and transferred to James W. Welch, Esq., of Astoria, Oregon, for collection," and, further, "that the president and secretary be and they are now authorized to execute all necessary papers and assignments or otherwise to carry title to said notes and other evidence of indebtedness, and deliver the same to the said James W. Welch for the purpose aforesaid." The plaintiff testified that he is the holder of the note; that he procured it from the agents of the bond committee, it being assigned to him by them; and, on cross-examination, that he paid nothing for the note, and that it was assigned to him as agent and collector, thereby clearly indicating the capacity in which he holds it. These facts are undisputed, there being nothing in the record to gainsay or contradict them in any way; and the question arises, can plaintiff maintain the action? In other words, is his title and interest in the paper such as he may sue Kinney, a member of the bond committee, and recover at law?

1. If the plaintiff were the owner of the note in the legal sense that it was his in his own right, a different question might arise. But he is not; he is but a holder for collection, and his rights are not broader, nor more to be conserved, than those of the Guaranty Bond Committee, which has the legal title to the paper; and, in effect, he is suing in the right of such committee. By the latest expression of this court, speaking through Mr. Justice BEAN, it was said that a promissory note indorsed "for collection" was "not strictly a contract of indorsement, but rather the creation of a power, the indorsee being the mere agent of the indorser to receive and enforce payment for his use. The title to the note and the proceeds thereof remain in the payee, and he may maintain suitable actions and proceedings to enforce his right": *Smith* v. *Bayer*, 46 Or. 143 (79 Pac. 498). And it was held that an indorsee was not a holder

for value so as to cut off defenses against the indorser. Such is undoubtedly the true principle: 2 Randolph, Com. Paper (2 ed.), § 726. The bond committee is composed of individuals, but not incorporated or otherwise organized so as to become a distinct entity, and it is only in a joint capacity that they hold or possess any title to the note. Being joint owners, they must all join in the action: 15 Enc. Pl. & Pr. 528. None less than the whole number can sue, unless by reason of the death of one or more of them. By suing through their agent, they are themselves suing, and the result is that Kinney is suing himself against his own protest. Thus is involved a "legal absurdity," as characterized by Mr. Chief Justice SHAW in *Warren* v. *Stearns,* 19 Pick. 73, and the action cannot be entertained.

2. It is contended on the part of the defendant that the effect of assigning his note to the bond committee of which he was a member was to discharge and extinguish it at law, but such a result could hardly follow. The defendant participated in all the proceedings, and there is no intendment of that nature to be found anywhere in the relations between the parties. Some stress is laid upon the fact of defendant's active participation in the affairs of the committee as being inimical to his defense, but they are not adequate to confer a right of action against himself, which is the vital infirmity of plaintiff's cause. The finding of the court that plaintiff is the holder of the note is equivocal under the pleadings. "The term 'holder' is properly applied to a person having possession of the paper and making the demand, whether in his own right or as agent of another": 15 Am. & Eng. Enc. Law (2 ed.), 509; *Bowling* v. *Harrison,* 47 U. S. (6 How.) 248 (12 L. Ed. 425). Now, if it was intended to find that plaintiff was the holder in the sense that he was the owner, the finding is not supported by the evidence; for it is all the other way, without a scintilla of proof to contradict it so as to involve any dispute of fact. But if it was intended to indicate merely that plaintiff was the holder for collection, as agent of the bond committee, without any other title, then the finding does not support the judgment, for in that sense, as we have seen, the defendant is placed in the position of suing himself, which the law does not sanction.

· The judgment will therefore be reversed, and the cause remanded for such further proceedings as may seem proper.

REVERSED.