Smith vs. The Milwaukee Builders' & Traders' Exchange and others.

SMITH, Respondent, vs. THE MILWAUKEE BUILDERS' & TRADERS' EXCHANGE and others, Appellants.

*October 24 — November 8, 1895.*

*Negligence: Independent contractors: Violation of ordinance regulating construction of building: Injury to passer by: Who is responsible? Damages: Contributory negligence: Instructions to jury: Evidence.*

1. Contractors who had agreed to erect a building according to fixed plans and specifications and of certain materials were independent contractors, notwithstanding a provision that the work should be performed under the inspection and to the satisfaction of the architects, acting as agents of the owner,— it being clear from the whole contract that this was simply a reservation of the right of inspection.

2. The owner of the building in such case is not responsible for the negligence of the contractors' employees whereby a brick fell from the uncompleted building and injured a passer-by.

3. Under a city charter giving the common council power "to control and regulate the construction of buildings," "to control and regulate streets," "to regulate the manner of using the streets and pavements," etc., the council had power to pass an ordinance providing that "any owner or contractor who shall hereafter build or cause to be built" any building abutting on a public sidewalk shall, after the completion of the first story, cause a roofed passageway to be built in front of the building. upon the sidewalk, under pain of fine or imprisonment; and such an ordinance is reasonable.

4. All persons whose duty it is, under such an ordinance, to make the covered way are guilty of negligence if they fail to do so, and are liable for an injury resulting by reason thereof to one traveling on the sidewalk in the exercise of ordinary care.

5. The nonperformance of the duty imposed by the ordinance cannot be excused by the plea of an independent contract by which another agreed to perform the duty.

6. The word "contractor" in such ordinance applies not only to contractors for the walls and brick work, but also to a separate contractor for the iron work, consisting of girders, beams, and floor joists, and constituting an integral and substantial part of the building.

Smith vs. The Milwaukee Builders' & Traders' Exchange and others.

7. The future pain and suffering for which a recovery may be had in an action for personal injuries is that only which the plaintiff is *reasonably certain* to endure.

8. An instruction that the plaintiff was not chargeable with negligence because, being in a place of danger, she did not use the best means of escaping when warned, is *held* to have been misleading, where the plaintiff denied having received any warning, and the evidence showed that she did not understand or know that she was in any danger and did not adopt any course of action while facing an imminent danger or sudden peril.

9. A deposition cannot be used on the trial against defendants who were not parties to the action when it was taken.

10. An instruction to the effect that negative testimony is confined to that of witnesses who, though present at a transaction, say that they did not see or did not hear, is erroneous, since testimony which is positive in form may amount to mere negative testimony.

11. It is error also to charge that the positive testimony of a witness to the existence of a certain thing and the testimony of another witness that such a thing did not exist are equally credible.

APPEALS from a judgment of the superior court of Milwaukee county: R. N. AUSTIN, Judge. *Reversed.*

This is an action brought to recover damages for injuries to the person of the plaintiff, caused by the falling of a brick from the top of the fourth story of a partially completed building in the city of Milwaukee, owned by the defendant the *Milwaukee Builders' & Traders' Exchange.* The accident happened on the morning of the 18th of April, 1892. At the time of the accident the defendant exchange was constructing a five-story brick and iron building, and the defendant *Neff* had contracted with the exchange to build, and was then engaged in building, the masonry of the building, and had completed the walls to the top of the fourth story. The defendants *Bayley,* who were copartners, had contracted with the exchange to put in place the structural iron for the building. Both *Neff* and the *Bayleys* were performing the work undertaken by them under separate and independent contracts with the exchange. Each of said con-

tracts contained a provision that the contractor should well and sufficiently perform and finish his work "under the direction and to the satisfaction of Ferry & Clas, architects, acting as agents for the owner." The contracts also contained provisions for the inspection of the work by the architects and their employees. An ordinance of the city of Milwaukee was introduced in evidence, which was in force at the time of the accident, providing in substance that any owner or contractor who should build a building within the fire limits of the city of Milwaukee, abutting upon any public sidewalk, should, after the completion of the first story of the building, cause a passageway to be laid in front of the building, upon the sidewalk, and cause the same to be roofed at a height not less than ten feet, and providing for the punishment for failing to comply with the ordinance.

The accident to the plaintiff occurred about 8 o'clock on Monday morning. On the Saturday previous *Neff* had completed the walls of the building to the top of the fourth story, in readiness for the iron girders to be put in place to support the floor of the fifth story. On leaving work Saturday night *Neff*'s men put canvas upon the walls of the building, with loose bricks thereon to hold it in place. On Monday morning *Neff*'s men were not at work, but the *Bayleys* were commencing to put the iron girders in place for the fifth story, and hoisting girders and beams to the top of the fourth story by a derrick. The plaintiff resides about a block and a half from the place of the accident, and was thirty years old. She passed along the sidewalk on Fifth street, opposite the building in question, and went to a drug store on Grand avenue, and a few minutes afterwards she returned, and while passing along the sidewalk, within about six feet of the building, a brick was in some manner caused to fall from the top of the building, and struck her on the head, fracturing the skull and severely injuring her. The plaintiff claims that all the defendants are liable for her in-

juries, by reason of negligence. The evidence was conflict-ing as to whether there were any guards or barriers placed at the north and south ends of the wall, but it was admitted that no roof had been placed over the sidewalk on Fifth street.

The jury returned the following special verdict: "(1) At the time the plaintiff first passed along the sidewalk adja-cent to the building on Fifth street, on the morning of the accident, had the north end of that sidewalk been guarded by due precaution against accident to pedestrians? *A.* No. (2) At the time the plaintiff first passed along the sidewalk adjacent to the building on Fifth street, on the morning of the accident, was there a barrier across the north end of said sidewalk sufficient to warn pedestrians it was danger-ous to pass along said sidewalk? *A.* No. (3) At the time the plaintiff passed along the sidewalk adjacent to the build-ing on Fifth street, on the morning of the accident, was the south end of said walk guarded by due precaution against accident to pedestrians? *A.* No. (4) At the time the plaint-iff first passed along the sidewalk adjacent to the building on Fifth street, on the morning of the accident, was there a barrier across the south end of said sidewalk sufficient to warn pedestrians that it was dangerous to pass along said walk? *A.* No. (5) Was there any plank across the north end of the sidewalk, which was moved by the men at work in hoisting the iron upon said building, before the plaintiff was injured, and before she passed along Fifth street the first time on that day? *A.* No. (6) Was the brick which fell from the building and injured the plaintiff displaced from the pier? *A.* No. (7) Was the brick which fell and injured the plaintiff a loose brick placed on canvas covering the wall or pier? *A.* Yes. (8) Was the brick which fell and injured the plaintiff caused to fall by the men who were at work hoisting the iron upon the building? *A.* No. (9) Were men there employed in the business of hoisting

iron upon the building at the time the plaintiff passed along said sidewalk the first time? *A*. Yes. (10) Was the defendant the *Milwaukee Builders' & Traders' Exchange* guilty of any negligence or want of care which was the proximate cause of the injury to the plaintiff? *A*. Yes. (11) Was the defendant *Max Neff* guilty of any negligence or want of care which was the proximate cause of the injury to the plaintiff? *A*. Yes. (12) Were the defendants the *Bayleys* guilty of want of ordinary care which contributed to the injury? *A*. Yes. (14) If the court shall be of the opinion that plaintiff is entitled to recover, at what sum do you assess her damages? *A*. $5,000."

Judgment for the plaintiff against all of the defendants was entered upon the verdict, and they have appealed separately.

For the appellant *Milwaukee Builders' & Traders' Exchange* there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *E. P. Vilas.*

For the appellant *Neff* there was a brief by *Van Dyke & Van Dyke.*

For the appellants *Bayley* there was a brief by *Geo. E. Sutherland* and *Rogers & Mann,* and oral argument by *Mr. Sutherland.*

For the respondent there was a brief by *Austin & Fehr,* and oral argument by *W. H. Austin.* As to the liability of the defendant exchange, they cited *Robbins v. Chicago,* 4 Wall. 657; *Hundhausen v. Bond,* 36 Wis. 40; *Whitney v. Clifford,* 46 id. 146; 1 Shearm. & Redf. Neg. §§ 13, 176; *McCall v. Chamberlain,* 13 Wis. 640, 641; *Brusso v. Buffalo,* 90 N. Y. 679; *Storrs v. Utica,* 17 id. 104; *St. Paul v. Seitz,* 3 Minn. 297; *Logansport v. Dick,* 70 Ind. 65; *Detroit v. Corey,* 9 Mich. 165; *Hawver v. Whalen,* 49 Ohio St. 69; *Susquehanna Depot v. Simmons,* 112 Pa. St. 384; *Lancaster Ave. Imp. Co. v. Rhodes,* 116 Pa. St. 377; Smith, Neg. 88; Lloyd, Buildings (1st ed.), 124; *Ellis v. Sheffield G. C. Co.* 2 El. &

B. 767; *Clark v. Fry*, 8 Ohio St. 358; *Congreve v. Smith*, 18 N. Y. 79, 83; Sutherland, Stat. Const. § 443; *Faren v. Sellers*, 39 La. Ann. 1011; *Schwartz v. Gilmore*, 45 Ill. 455; *Homon v. Stanley*, 5 Am. Rep. 393; 14 Am. & Eng. Ency. of Law, 832; *Bower v. Peate*, 1 Q. B. Div. 321; *Metheny v. Wolfs*, 2 Duvall (Ky.), 137; *Jager v. Adams*, 123 Mass. 27; *Blyth v. Birmingham W. Works*, 11 Exch. 781, 784; Ray, Neg. of Imposed Duties, 103; *Harper v. Milwaukee*, 30 Wis. 365. The ordinance requiring the erection of the covering was valid. *Comm'rs of Easton v. Covey*, 74 Md. 262; *Sangamon D. Co. v. Young*, 77 Ill. 197; *Baumgartner v. Hasty*, 50 Am. Rep. 830, and cases cited; *Miller v. Valparaiso*, 10 Ind. App. 22; *Raymond v. Keseberg*, 84 Wis. 302, 310.

WINSLOW, J. The claim made by the defendant the *Builders' Exchange*, the owner of the building, that *Neff* and the *Bayleys* were independent contractors, seems to us well founded. It is true that in their contracts it is provided that the work is to be performed under the direction and to the satisfaction of the architects, acting as agents of the owner, but it is entirely certain from the whole contract that this is simply a reservation of the right of inspection. It is not a reservation of power to control the manner of the work, to change materials to be used, or prescribe ways and methods in which the work is to be carried out. The contractors have agreed to build the building according to fixed plans and specifications, and of certain materials. They can do the work in their own manner and with their own machinery, providing they comply with their contract. The architect can only require that the building be such as the contract demands. He has no control for any other purpose. We do not regard this reservation of the right of inspection of the work as changing the character of the contract. *Hughbanks v. Boston Inv. Co.* (Iowa), 60 N. W. Rep. 640. It is evident that the falling of the brick was collateral to the

contract, and was, if negligence at all, the result of negligent acts on the part of some of the workmen employed by the contractors, and was not the necessary or natural result of any act which the contractors were employed to do. In this situation the owner is not liable, at least in the absence of some other distinct ground of liability. *Hundhausen v. Bond*, 36 Wis. 29; *Hackett v. W. U. Tel. Co.* 80 Wis. 187.

In the present case, however, the plaintiff claims another distinct ground of liability on the part of the owner of the building, as well as the contractors, arising out of the failure to make a covered passageway along the Fifth street front of the building, thus violating the city ordinance referred to in the statement of facts. This ordinance was passed by the common council before the erection of this building was begun, and provides in substance that "any owner or contractor who shall hereafter build or cause to be built" any building abutting on a public sidewalk shall, after the completion of the first story, cause a roofed passageway to be built in front of the building, upon the sidewalk, under pain of a certain fine or imprisonment. The power to pass this ordinance seems clear. The charter gives the common council power "to control and regulate the construction of buildings," "to prevent and prohibit the erection or maintenance of any insecure or unsafe buildings," "to control and regulate streets," "to prevent the encumbering of streets and alleys in any manner and protect the same from any encroachment or injury," and "to regulate the manner of using the streets and pavements." Laws of 1874, ch. 184, subch. 4, sec. 3. An ordinance passed by the common council, which is within its power to pass and is reasonable, has the effect of law within the corporate limits. This ordinance, we think, is entirely reasonable, and it was therefore law to all intents and purposes, and it required both the owner and contractor to construct a covered way over the sidewalk where this accident happened. Had

such a way been constructed the plaintiff could not have been injured. The failure to perform this statutory duty must be held negligence. 2 Thomp. Neg. 1232; *Mueller v. Milwaukee St. R. Co.* 86 Wis. 340, and cases cited; *Karle v. K. C., St. J. & C. B. R. Co.* 55 Mo. 476. If by reason of such negligence damage directly results to any one for whose benefit the law was passed, and who is not guilty of contributory negligence, a civil action for damages may be maintained. *Bott v. Pratt*, 33 Minn. 323; *McCall v. Chamberlain*, 13 Wis. 637. Nor can the nonperformance of such a duty be excused by the plea of an independent contract by which another has agreed to perform the duty. 2 Thomp. Neg. 904. The plaintiff's contention that the failure to comply with this ordinance constituted negligence on the part of the owner and on the part of *Neff*, who was the contractor for the walls and brick work, must certainly be sustained. The situation of the *Bayleys* is somewhat different, but still we think that they are contractors who are building a building within the meaning of the ordinance. Doubtless the ordinance would not apply to a painter or a plumber or a mere plasterer or decorator, or any one whose work does not constitute a substantial part of the building. But the iron work in this case is certainty an integral and substantial part of the building. It consists of iron girders, beams, and floor joists, evidently set in the walls, and without which there could be no building, but a mere shell. The mason and the iron contractor evidently must and do work together to make this building. The work of one seems to be fully as important as that of the other, and neither can do his work if the work of the other is not done. We hold, therefore, that the word "contractor," in the ordinance, applies as well to the *Bayleys* as to *Neff*, and that all the defendants are within the terms of the ordinance. The ordinance being a reasonable and valid one, and framed to protect the passenger from injury, when a passenger who is exercising ordi-

nary care is injured by reason of the failure to comply with its provisions he may undoubtedly base a claim of negligence on account of such failure against all whose duty it was, under the ordinance, to make the covered way.

These considerations demonstrate that there was no error in overruling the motions for nonsuit and the motions to direct verdicts made by the several defendants. A new trial of the case will be necessary, however, because of certain errors, which we will briefly state:

1. The jury were instructed on the subject of damages that the plaintiff would be entitled to compensation for the pain and suffering which she had endured, also for the pain which she may be *likely* or that there is a *reasonable probability* that she will endure in the future. This was error. The plaintiff is only entitled to recover for such future pain as the evidence shows she is reasonably certain to endure. *Block v. Milwaukee St. R. Co.* 89 Wis. 371.

2. The jury were also instructed as follows: " I instruct you, gentlemen, that a person is not guilty of contributory negligence in a case where that person receives an injury, being in a place of danger, because that person does not exercise his best judgment in avoiding injury and escaping from danger when warned. So, if the plaintiff, at the time the brick was seen to be falling from the top of that building, was warned and told to escape,— told to get away from the falling brick,— she is not chargeable with negligence because she did not use the best means of escaping from receiving an injury at that time, because, being in a place of danger, she is not chargeable with negligence if she did not use the best means of escaping." This was misleading in the present case, because no facts in evidence warrant it. The plaintiff denies having received any warning, and the evidence of the defendants' witnesses who testified to having shouted at the plaintiff when the brick was falling shows affirmatively that the plaintiff did not understand or know

that she was in any danger, and did not adopt any course of action while facing an imminent danger or sudden peril. Under such circumstances the charge in question should not have been given.

3. The defendants *Bayley* were not parties to the suit as originally brought, and before they were made parties the deposition of one Kneer was taken. Upon the argument of the case the attorney for the defendant *Neff* was allowed, against objection, to read a part of this deposition to the jury, against the *Bayleys*, in reply to the argument of Mr. Sutherland on behalf of the *Bayleys*. This was error. It could not be used as against the *Bayleys*, because they were not parties to the action when it was taken.

4. The charge was erroneous, also, when treating of positive and negative testimony. The trial judge practically told the jury that negative testimony was confined to that of a witness who, though present at a transaction, says that he did not see or did not hear. This is too limited a rule. Testimony which is positive in form may amount merely to negative testimony. *Ralph v. C. & N. W. R. Co.* 32 Wis. 177; *Draper v. Baker*, 61 Wis. 450. It is erroneous, also, to say that the positive testimony of a witness to the existence of a certain thing, and the testimony of another witness that such a thing did not exist, are equally credible. This instruction ignores every well-settled principle which is to be applied in determining the credibility of witnesses, and lays down the rule that one witness will counterbalance another. *Draper v. Baker, supra.*

Numerous other questions were presented and argued, but we think the general principles laid down in this opinion so far simplify the questions presented that upon a new trial many of these questions will not again arise, and we do not deem it our duty to consider them in this opinion.

*By the Court.*— Judgment reversed upon all the appeals, and action remanded for a new trial.