### CHICAGO & N. W. RY. CO. v. DE CLOW.

(Circuit Court of Appeals, Eighth Circuit. July 7, 1903.)

#### No. 1,841.

1. CARRIERS—INJURY TO PASSENGER—FUTURE DAMAGES—THEY MUST BE REASONABLY CERTAIN.

The liability for future damages for the wrongful infliction of a personal injury is strictly limited to compensation for such pain and other evil effects of the act as are reasonably certain to result from it. Possible, even probable, future effects are too remote and speculative to form the basis of legal injury.

2. SAME.

A charge that a plaintiff could recover compensation "for any pain and suffering he may be called upon to undergo in the future—that is, in case you find that he will suffer pain and suffering in the future"—is not error, in the absence of any suggestion or request for a modification or explanation of the instruction before the jury retires.

---

¶ 1. See Damages, vol. 15, Cent. Dig. § 236.

**3. EVIDENCE—GENERAL OBJECTIONS.**

General objections to a question or to an offer of evidence cannot be sustained if any part of the evidence which counsel seek to elicit by the query, or which they offer to introduce, is admissible.

**4. TRIAL—QUESTION OF FACT—WITHDRAWAL FROM JURY.**

It is only when the evidence is such that all reasonable men in the exercise of an unprejudiced judgment must reach the same conclusion that a court may lawfully withdraw a question of fact from the jury.

**5. EVIDENCE—INCONSISTENT TESTIMONY—IMPEACHMENT.**

Statements of witnesses inconsistent with their testimony upon material issues are competent and material evidence to impeach their credibility.

**6. APPEAL—OBJECTION NOT RAISED BELOW.**

When a complaint states a cause of action upon contract and one in tort arising out of a single wrongful act, and the case is tried, and the court charges the jury on the theory that the action is for breach of a contract, without objection or suggestion by the defendant that the plaintiff has waived his cause of action upon the contract by pleading the tort, it is too late to present that objection in an appellate court for the first time.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Northern District of Iowa.

On September 15, 1899, the plaintiff below, W. L. De Clow, was riding as a passenger in the caboose of a freight train of the Chicago & Northwestern Railway Company, which was transporting some horses for him, when the train was so suddenly stopped that he was thrown against the corner of the conductor's desk, and his right kidney was so seriously injured that he continued to suffer from the accident until the trial of the action, more than two years later. His condition was not then improving. He sued the railway company for his injury, and for injury to his horses, on account of this accident, and recovered a verdict and a judgment, which this writ of error challenges.

Frank F. Dawley (N. M. Hubbard, Jr., and C. E. Wheeler, on the brief), for plaintiff in error.

P. W. Tourtellot and E. H. Crocker (Henry Rickel, on the brief), for defendant in error.

Before SANBORN, THAYER, and VAN DEVANTER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The liability for future damages for the wrongful infliction of a personal injury is strictly limited to compensation for such suffering and other evil effects of the act as are reasonably certain to result from it. Possible, even probable, future damages are too remote and speculative to form the basis of legal injury. If they may or subsequently do result from the accident they are but a part of that damnum absque injuria which reaches too far into the realm of conjecture to form any part of the basis of an action at law. Filer v. N. Y. Central R. R. Co., 49 N. Y. 42, 45; Curtis v. R. & S. R. R. Co., 18 N. Y. 534, 542, 75 Am. Dec. 258; Fry v. Railway Co., 45 Iowa, 416, 417; White v. Milwaukee City Ry. Co., 61 Wis. 536, 541, 21 N. W. 524, 50 Am. Rep. 154; Block v. Milwaukee St. R. Co., 89 Wis. 371,

380, 61 N. W. 1101, 27 L. R. A. 365, 46 Am. St. Rep. 849; Smith v. Milwaukee Builders' & Traders' Exchange, 91 Wis. 360, 368, 64 N. W. 1041, 30 L. R. A. 504, 51 Am. St. Rep. 912; Ford v. City of Des Moines, 106 Iowa, 94, 97, 75 N. W. 630; Chicago, R. I. & Pac. R. Co. v. McDowell (Neb.) 92 N. W. 121.

The chief complaint of the trial below is that in its rulings upon testimony and in its charge to the jury the Circuit Court violated this rule. The plaintiff's attending physician testified that his right kidney was seriously affected; that in his opinion its unhealthy condition was caused by the accident; that he thought the disease in it had reached a chronic state; that the tendency was for it to continue in that condition; that if the plaintiff pursued the usual modes of living his condition would get worse; that the disease would tend to acute nephritis, and as that would proceed it would go on to Bright's disease of the right kidney; and that Bright's disease usually proves fatal. After this witness had retired from the stand Dr. Raymer was called by the plaintiff. He testified that he first examined the plaintiff the day before he testified. He then answered questions as an expert, and among other things said that the probable result of the injury the plaintiff had suffered was that he would tend to get worse; that there was some danger in a case of his kind that the high specific gravity of his urine which had been proved would give rise to Bright's disease or pyelitis or cystitis; that he would hardly say that these results were more likely to occur than not to occur, but that they were things to fear. Thereupon his examination proceeded in this way:

"What is the nature of the disorders such as Bright's disease, and the other disorders, pyelitis and cystitis, that you have mentioned, as to their ultimate effect and termination? (Defendant objects because incompetent and immaterial; there is no evidence that plaintiff has Bright's disease or will have or is likely to have. Overruled, and defendant excepts.) A. Some of these diseases, such as pyelitis and inflammation of the kidney, such as Bright's disease, endanger life. An inflammation of the kidney is not necessarily fatal, but it will endanger life, and may ultimately cause the death of the patient sooner than he would otherwise die. Q. Is there any known cure for either Bright's disease or pyelitis? (Defendant objects as incompetent, irrelevant, and immaterial. Overruled, and defendant excepts.) A. That would be depending on the case and on the stage of the disease. A great many cases of acute Bright's disease get well. Many cases of pyelitis get well, depending on what has been the cause, and whether the cause can be removed at once. But after they have reached a certain stage, and if the cause is such that it cannot be removed, then they are incurable. If it is due to injury, then it depends upon how long that cause has been in existence, and how removable the results of the injury are. The progress of these diseases may be either quick or slow. Q. Under what condition is development slow and under what conditions is it quick? (Defendant objects as being incompetent, immaterial, and vague, calling for a lecture on the subject. Overruled, and defendant excepts.) A. Where the cause is comparatively mild and of long continuance, of course in those cases we would expect the results to come on slowly."

In its instruction to the jury upon the subject of damages the court, while speaking of the plaintiff, said:

"Then he is entitled to compensation for the pain and suffering he had undergone in the past, and for any pain and suffering he may be called upon to undergo in the future—that is, in case you find that he will suffer pain and suffering in the future; he is entitled to receive damages for that."

The criticism of the admission of the testimony challenged is that there was no evidence at the time it was admitted which would warrant a finding by the jury that it was reasonably certain that Bright's disease or pyelitis or cystitis would result from the injury, and therefore evidence relative to the nature of these diseases was immaterial and manifestly prejudicial to the defendant. This conclusion is conceded to be a rational deduction from the premises assumed. But the assumption that there was no testimony from which a jury might lawfully infer that one of these diseases was reasonably certain to be caused by the accident is not sustained by the evidence in this record, and when the premises fall the conclusion follows. The plaintiff's attending physician had testified that he had treated him at times for more than two years after the injury; that his condition was not improving; that his right kidney was in a chronic state of disease; that it would naturally get worse; that the disease would tend to acute nephritis, and as that would proceed it would go on to Bright's disease. The effect of this testimony was that, if the chronic disease of the plaintiff's kidney pursued its natural course, it would go on into Bright's disease. It cannot be truthfully said that no reasonable man would be of the opinion that the natural course of a disease is its reasonably certain course, and in this state of the case it is not the province of a court to declare that a jury could not lawfully reach this conclusion. It is only when the evidence is such that all reasonable men, in the exercise of an unprejudiced judgment, must reach the same conclusion, that a court may lawfully withdraw a question of fact from the jury. There was therefore evidence from which the jury could lawfully find that Bright's disease was reasonably certain to result from the plaintiff's injury. But there was no evidence that pyelitis or cystitis was reasonably certain to follow the accident. Turn, now, to the three questions challenged by the objections of the railway company. Each seeks information relative to the character not only of Bright's disease but of one or both of the other diseases to which reference has been made. These questions were met by the general objections and by a specific objection to the testimony relative to Bright's disease only. The testimony to the character of that disease was competent and material. Either party had the right to prove the nature and effect of the disease which the plaintiff's attending physician had testified would be the natural result of his injury in the usual course of events. The objections to the evidence sought were therefore properly overruled. General objections to a question propounded to a witness cannot be lawfully sustained if any part of the testimony which the examiner seeks to elicit by the query is admissible over the objections. The specific objection to the testimony relative to Bright's disease was properly overruled because the evidence relative to that disease was competent, and the general objections to the testimony relative to the three diseases were properly overruled because the testimony relative to one of them was admissible.

Nor is the exception to the charge of the court more tenable. If the instruction that the plaintiff was entitled to compensation "for any pain and suffering he may be called upon to undergo in the future" stood alone, without qualification by any other part of the court's

directions to the jury, it would undoubtedly be erroneous. The authorities cited for the defendant go no farther. But this sentence did not stand alone. The court was evidently conscious of the inherent error in the unqualified statement it contained the moment it was uttered, and it instantly added: "That is, in case you find that he will suffer pain and suffering in the future." It is clear that the court made this qualification of its first statement for the express purpose of conforming its charge to the established rule which was evidently in its mind, and which stands at the opening of this opinion; and it is also obvious that both the court and the counsel for the railway company supposed that this purpose had been fully accomplished, for, while a formal exception was taken to this paragraph, exceptions were also taken to 23 other paragraphs of this charge, all but 4 of which have been abandoned, and no suggestion was made to the court before the retirement of the jury that it had failed in its attempt to give them the correct rule of law upon the subject under consideration. In our opinion, there was no such failure. The jury has found under this charge that the plaintiff will endure all the future suffering for which they have given him compensation. In order to reach the conclusion that the court was guilty of prejudicial error in this instruction, the presumption must be indulged that the jury has found that the plaintiff will endure future suffering that it was not reasonably certain from the evidence that he would sustain; that they have found that he will suffer what they were not reasonably certain that he would suffer. This presumption is too violent and irrational for us to raise. There is no such legal presumption. An appellate court cannot and ought not to create it, and there was no prejudicial error in this part of the charge.

The conductor of the train upon which the plaintiff was injured was a witness for the defendant. In his direct examination he testified to two conversations which he had with the plaintiff, one at Moingona, where the accident happened, and one shortly after they left that place. He also testified that the stop of the train at the time of the accident was a gradual one, and that there was no sudden jar or noise of the cars coming together outside of the regular jars that are felt when a train is going around a curve. Upon cross-examination counsel for the plaintiff asked him this question: "Q. Shortly after you left Moingona, didn't you use the following language in a conversation with Mr. De Clow, referring to this shock, 'I have had a talk with the engineer about the matter, and hope you won't report it,' or words to that effect, in the waycar on that train?" He answered, over the objection of the defendant that the testimony was immaterial, not cross-examination, and not having any bearing on the character of the shock, "I remember no such talk." On rebuttal the plaintiff testified that after they left Moingona the conductor told him that he had talked with the engineer about the shock of the stop, and that he hoped that the plaintiff would not report it. To this testimony the defendant objected, just after it had been elicited, that it was not proper rebutting evidence, that it was hearsay, that it was not part of the res gestæ, and that it was not binding on the defendant. The court overruled these objections, and the defendant excepted. There was

no motion to strike out the last answer, and the objections to it after it had been made came too late to entitle the defendant as a matter of right to a review of the question it presents in an appellate court. But there was no error in either of the rulings, if they had both been subject to review. The question propounded to the conductor was proper cross-examination upon the conversations which he had related in his direct testimony. He had stated a part of two conversations, and opposing counsel had the right to inquire concerning the other parts of those talks which their client related.

Nor was the testimony of the plaintiff of the statement of the conductor that he had conversed with the engineer about the shock and that he hoped that the plaintiff would not report it immaterial or inadmissible. That statement was inconsistent with the conductor's testimony that there was no unusual shock or jar when the train stopped, and the fact, if it was a fact, that he made this statement before the trial, had a direct tendency to impeach the credibility of his testimony upon the crucial issue in the case. Prior statements of witnesses inconsistent with their testimony upon material issues are always competent to impeach their credibility. Delaware, L. & W. R. Co. v. Converse, 139 U. S. 469, 477, 11 Sup. Ct. 569, 35 L. Ed. 213.

Counsel for the railway company assail the charge of the court upon the burden of proof. They concede, however, that the instructions it delivered were correct if the plaintiff was entitled to recover for breaches of contracts of carriage under the averments in his complaint. There were two causes of action and two counts in the complaint in this suit—one for injury to the person of the plaintiff, and the other for injuries to his horses. In stating the first cause of action he alleged that he was a passenger on the freight train, that it was carelessly and negligently stopped, and that by reason of this negligent stop he was injured. In stating his second cause of action he averred that he shipped over the defendant's railroad several car-loads of horses and colts; that while they were en route the train which carried them was so carelessly and recklessly operated that they were injured. Now, the attack of counsel for the railway company upon the portion of the charge in hand is founded entirely upon the assumption that the plaintiff waived his causes of action for breaches of the contracts because he alleged in each count of his complaint that the train was negligently stopped, or, in other words, that the contracts were negligently and recklessly broken. The record discloses no suggestion or contention on his part for this construction of the complaint at the trial in the court below, and no objection or exception to the charge in which this theory was either developed or mentioned. Each count of the complaint plainly charged a breach of contract—the first in the averment that the plaintiff was a passenger in one of the defendant's trains, and that he was injured by its movements; the second in the allegations that the plaintiff shipped the stock over the defendant's road, and that they were injured by the operation of the train. The only basis for the contention of counsel for the railway company that the causes of action upon the contracts were waived is that the plaintiff alleged

that the train was so negligently and recklessly operated and stopped that the injuries were inflicted. The truth is that the complaint well states two causes of action upon contract and two causes of action in tort which arose out of the single tortious act which was in itself a violation of both the contracts. Forms of action are abolished by statute in the state of Iowa (McClain's Ann. Code Iowa 1888, § 3712); and the plaintiff is required to insert in his complaint a statement of the facts constituting his cause of action and a demand for the relief to which he considers himself entitled (section 3852, McClain's Ann. Code Iowa 1888). The pleadings and practice in actions at law in the national courts are required to conform as nearly as may be to those in the state courts in like cases. Rev. St. § 914 [U. S. Comp. St. 1901, p. 684]. If a statement of the facts constituting the plaintiff's cause of action discloses two causes of action, or two reasons why he is entitled to the same relief, it is not perceived that he necessarily waives either cause by making the statement of the facts in the manner prescribed by the Code. It is possible that by a proper motion made before the evidence was introduced counsel could have compelled the plaintiff to elect whether he would proceed in this action for breaches of contracts or for torts. But it is certain that it is too late to make that motion now, or to successfully claim in this court for the first time that the plaintiff waived his causes of action for breaches of his contracts when his complaint plainly stated them, and when no such suggestion or objection was made in the court below either during the trial or at the close of the charge to the jury. When a complaint states a cause of action upon contract and one in tort arising out of a single wrongful act, and the case is tried, and the court charges the jury on the theory that the action is for breach of the contract, without objection or suggestion by the defendant that the plaintiff has waived his cause of action upon the contract by pleading the tort, it is too late to present that objection in an appellate court for the first time.

There was no substantial error in the trial of this case, and the judgment below must be affirmed.

It is so ordered.