CHICAGO, M. & ST. P. RY. CO. v. LINDEMAN.

(Circuit Court of Appeals, Eighth Circuit. March 10, 1906.)

No. 2,257.

1. CUSTOMS AND USAGES—CUSTOM MUST BE UNIFORM, CERTAIN, KNOWN, OR NOTORIOUS—FACTS HELD INSUFFICIENT TO ESTABLISH.

A custom must be uniform, certain, and known, or so notorious that a person of ordinary prudence, in the exercise of reasonable care, dealing with its subject, would have been aware of it.

Where the plaintiff's witnesses testify that there was a custom of doing an act in a certain way and that they followed this custom, and defendant's witnesses testify that they performed the act at the same place during the same time in another way, and no witness contradicts the testimony of the latter or testifies that the alleged custom mentioned by the plaintiff's witnesses was either uniform or universal, it is held that the evidence is insufficient to warrant a finding by a jury

that the alleged custom was uniform, and hence the question of its existence should not have been submitted to them.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Customs and Usages, §§ 5, 23, 24.]

2. DAMAGES—FUTURE 'PAIN MUST BE REASONABLY CERTAIN TO AUTHORIZE RECOVERY—THOSE WHICH MAY RESULT ARE NOT RECOVERABLE.

The liability for future damages for the wrongful infliction of a personal injury is strictly limited to compensation for such pain and other evil effects as are reasonably certain to result from it. Possible, even probable, future effects are too remote and speculative to form the basis of legal recovery.

A charge that the plaintiff may recover damages for pain and suffering which may result from the injury in the future is erroneous.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Damages, §§ 55–57, 552.]

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Western District of Missouri.

Frank Hagerman (H. H. Field and Burton Hanson, on the brief), for plaintiff in error.

W. F. Guthrie (L. C. Boyle, on the brief), for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

SANBORN, Circuit Judge. In the yards of the defendant below at Kansas City, Mo., there was a level platform 15 feet above the ground and 217 feet long and a trestle 293 feet long upon a grade of $5^3/_{10}$ per cent. which extended from the platform to the ground. On this platform and trestle there was a railroad which extended into the yards and was connected with other railroads. A short distance from the foot of the incline there was a switch, by means of which an engine or a car could be turned from the railroad track which extended from the platform past the switch into the yard. The platform and trestle were constructed and used for the purpose of unloading coal from cars into chutes provided for that purpose. Two empty coal cars stood upon the platform which the yardmaster had directed the plaintiff below and three of his fellow servants to "drop" down from the platform into the yard. Empty cars were "dropped" in this way: An engine was coupled to the cars which drew them out over the summit of the incline to such an extent that they could be held there by their brakes, but would, when the brakes were released, be drawn down the incline and sent along the track into the yard by gravity. When cars had been drawn to the proper place, the engine was uncoupled, moved down the incline, and sent upon another track by means of the switch, and as soon as the engine had passed the switch was closed, notice was given to the field brakeman upon the cars who released the brakes, and the cars were then dropped down the incline and passed out into the yard.

On May 23, 1903, Gage, the engineer, Smith, a switchman, whose place was upon the engine, and the plaintiff, whose station was on the top of the cars, undertook to drop two cars into the yard. The engine was coupled to them, drew them upon the summit of the in-

cline, stopped and was uncoupled, the plaintiff set one brake on the leading car, and notified the switchman, Smith, upon the engine to take it away. The engineer and Smith started the engine slowly down the incline, but the brake upon the car did not hold them, and they followed the engine. As soon as Smith saw that the cars were coming he signaled to the engineer to stop, and he did so. Meanwhile the plaintiff, who had been standing on the top of the leading car, had started toward the rear car to set another brake, and as he was stepping from one car to the other they struck the engine and he was thrown between the cars by the impact and injured. He sought to recover damages of the company for the negligence of Gage and Smith under the statute of Missouri which charges railroad companies with liability for the carelessness of fellow servants. His principal charge was that they violated a custom of stopping the engine after it was uncoupled and had moved from two to four feet away from the cars and holding it there until the question whether or not the brakes would hold the cars was determined by actual trial. The defendant denied the existence of this alleged custom, and the evidence upon this issue was this: The plaintiff testified that he had assisted in dropping cars from the platform 15 or 20 times and that such a custom existed. Metler, who had been foreman of the switching crew in the yard for many years, testified in this way:

"Q. Who cuts the engine off from the cars? A. The man following the engine. The engine slacks away, and he sits in sight there.
"Q. Who? A. The man following the engine.
"Q. What does he sit there for? A. Watching the cars.
"Q. What does the engine do during this time? A. It slacks ahead and stops.
"How far does it slack ahead? A. Three or four feet.
"Q. I will get you to state, whether this thing is done the same way day and night—or different. A. The same way day and night."

On the other hand, Smith, the switchman, testified that he probably had taken cars down this incline 50 or 75 times, that the engine never stopped after it was uncoupled at any time when he was assisting, but that it went on slowly down the incline unless the cars started. Gage, the engineer, testified that he had taken cars down from this platform four or five times and had seen them dropped frequently, that every time he had ever seen it done the engine was uncoupled and then taken slowly down the incline, and that he moved it in the usual way at the time of the accident. Fitzgerald, another engineer, testified that he had worked in the yards six or seven years, that he estimated that he had taken cars down from that platform 2,000 or 3,000 times, and that he never stopped his engine after uncoupling, and never knew it to be stopped unless the brakes on the cars failed to hold. Williams, a foreman of a switching crew, who had worked in this yard 12 years and had assisted to take cars down from this platform probably 500 times, testified that he never knew an engine to stop on the incline after it was uncoupled unless the cars started. Black, an engineer, testified that he had worked four or five years in the yards and had taken cars down from that

platform several hundred times, that he had pulled the empties out over the summit of the incline so that they would run down, then cut the engine off and had gone down; that he had seen the engine catch cars which came down when the brakes did not hold; but that he could not remember of ever stopping to see whether or not the brakes would hold.

The court charged the jury that if they found from this evidence that there was a uniform custom for the engineer to move his engine after it was uncoupled a short distance in front of the leading car and then wait and ascertain whether or not the brakes held, and, if they did not, to receive the impact of the cars, and, if they did hold, then to proceed on out of the way of the cars, and that the engineer, Gage, and the switchman, Smith, violated this custom at the time of the accident, they were guilty of negligence which, if causal, might entitle the plaintiff to a recovery. An exception was taken to this ruling, and it is specified as error. A custom has the force of law, and furnishes a standard for the measurement of many of the rights and acts of men. It must be certain or the measurements by this standard will be unequal and unjust. It must be uniform; for, if it vary, it furnishes no rule by which to mete. It must be known, or must be so uniform and notorious that no person of ordinary intelligence who has to do with the subject to which it relates and who exercises reasonable care would be ignorant of it; for no man may be justly condemned for the violation of a law or a custom which he neither knows nor ought to know. In short, a binding custom must be certain, definite, uniform, and known, or so notorious that it would have been known to any person of reasonable prudence who dealt with its subject with the exercise of ordinary care. U. S. v. Buchanan, 8 How. 83, 102, 103, 12 L. Ed. 997; Bowling v. Harrison, 6 How. 248, 259, 12 L. Ed. 425; Collings v. Hope, Fed. Cas. No. 3,003; Parrott v. Thacher, 9 Pick. (Mass.) 426, 431; York v. Wistar, Fed. Cas. No. 18,141; Greenwich Ins. Co. v. Waterman, 54 Fed. 839, 842, 4 C. C. A. 600, 603; Robinson v. U. S., 13 Wall. 363, 366, 20 L. Ed. 653; Jones v. Hoey, 128 Mass. 585, 587.

The record in this case fails to disclose substantial evidence of one of the elements of a custom of this nature—its uniformity. Two witnesses, one of whom had taken cars down from this platform only 15 or 20 times, testified that there was such a custom, and that cars had been dropped in conformity to it. Neither of them testified that this custom either uniformly or universally prevailed, or that there was not a custom equally well established to drop them without stopping the engine after it was uncoupled to ascertain whether or not the brakes would hold the cars. Five witnesses testified that they had taken cars down from this platform thousands of times and that they had never stopped an engine or seen it stopped on the incline after it was uncoupled unless the cars started and it stopped to catch them, and that they neither knew nor followed the alleged custom of the plaintiff's witnesses. No one came to contradict the testimony of any of these five witnesses or to say that they had not taken down cars without stopping the engine upon the incline in the way and to the extent to which they had testified. The result

was uncontradicted evidence that the custom to which the witnesses for the plaintiff testified was not uniform, and hence that it was not binding. Moreover, because it was not shown to be uniform it had not that notoriety which could charge the engineer and the switchman with notice of it, and as there was no evidence that they were actually aware of it the proof of the custom failed to show the knowledge or notoriety sufficient to sustain the custom. The question of the existence of the custom should not have been submitted to the jury.

Another specification of error is that the court instructed the jury that the plaintiff was entitled to recover for such pain and suffering caused by the injury as he "may in the future suffer." In Chicago & N. W. Ry. Co. v. De Clow, 124 Fed. 142, 143, 145, 61 C. C. A. 34, 35, 37, in which this court had occasion to consider the rule applicable to this question, it said:

"The liability for future damages for the wrongful infliction of a personal injury is strictly limited to compensation for such suffering and other evil effects of the act as are reasonably certain to result from it. Possible, even probable, future damages are too remote and speculative to form the basis of legal injury. If they may or subsequently do result from the accident, they are but a part of that damnum absque injuria which reaches too far into the realm of conjecture to form any part of the basis of an action at law. Filer v. N. Y. Central R. R. Co., 49 N. Y. 42, 45; Curtis v. R. & S. R. R. Co., 18 N. Y. 534, 542, 75 Am. Dec. 258; Fry v. Railway Co., 45 Iowa, 416, 417; White v. Milwaukee City Ry. Co., 61 Wis. 536, 541, 21 N. W. 524, 50 Am. Rep. 154; Block v. Milwaukee St. R. Co., 89 Wis. 371, 380, 61 N. W. 1101, 27 L. R. A. 365, 46 Am. St. Rep. 849; Smith v. Milwaukee Builders' & Traders' Exchange, 91 Wis. 360, 368, 64 N. W. 1041, 30 L. R. A. 504, 51 Am. St. Rep. 912; Ford v. City of Des Moines, 106 Iowa, 94, 97, 75 N. W. 630; Chicago, R. I. & Pac. R. Co. v. McDowell (Neb.) 92 N. W. 121."

The charge of the court upon this subject was not in accord with this rule, and the judgment below must accordingly be reversed. and the case remanded to the court below with instructions to grant a new trial.