# CHARLESTON.

GEORGE W. WILSON v. BOYD S. FLEMING *et al.*

Submitted November 8, 1921.    Decided November 22, 1921.

1.  APPEAL AND ERROR—*Judgment Awarding New Trial Reversed Only for Manifest Error.*

    A judgment awarding a new trial of an action will not be reversed unless it is manifestly erroneous.  (p. 557).

2.  DAMAGES—*For Future Permanent Consequences for Personal Injury Must be Certain, Not Remote or Speculative.*

    To form the basis of a legal recovery for the future permanent consequences of the wrongful infliction of a personal injury it must appear with reasonable certainty that such consequences will result from the injury.    Possible or probable future injurious effects are too remote and speculative.  (p. 559).

3.  HIGHWAYS—*Testimony as to How an Automobile Was Being Driven Just Before Collision Held Admissible.*

    Where the speed and manner in which an automobile is driven when a collision occurs is one of the issues to be determined by a jury upon conflicting evidence, testimony tending to show that one of the colliding cars was being driven on a public road in a dangerous or uncertain manner or at an extraordinary rate of speed a few minutes before the collision should when offered be submitted to the jury.  (p. 561).

4.  NEGLIGENCE—*Evidence of Former Acts Incompetent.*

    Evidence of former and remote negligent acts is incompetent to prove whether a person did or did not do the same or similar act of negligence on another particular occasion.  (p. 561).

5.  TIME—*Where Process is Returned on First Monday of March, a Declaration Filed on First Monday in June is in Time.*

If a process duly executed is returned at March rules, 1917 to the office of the clerk who issued it, the declaration is filed in time within the meaning of sec. 7, ch. 125, Code, if delivered to the clerk and filed by him June 4, 1917; March 5 and June 4 being respectively the first Monday of each of these months in 1917. (p. 562).

6.  EVIDENCE—*Presumed That a Public Officer Has Performed His Duty.*

Unless the contrary clearly appears, the presumption ordinarily is that a public officer performs the duties required of him by law. (p. 562).

7.  SAME—*Where Circuit Court Clerk Does Not Dismiss Suit Where Declaration is not Filed in Time, the Presumption is That He Received it Within Statutory Limit.*

If a circuit court clerk does not dismiss a suit, as he is required to do, if a declaration is not filed in his office within the time prescribed by sec. 7, ch. 125, Code, and if it be questionable whether he received and filed it within the time so required, the presumption is that he did receive and file it within the statutory time limit, there being no clear and convincing proof that it was not so received or filed. (p. 562).

(LIVELY, JUDGE. absent).

Error to Circuit Court, Harrison County.

Action by George W. Wilson against Boyd S. Fleming and another. A verdict for the plaintiff was set aside, and the plaintiff brings error.

*Affirmed and remanded.*

*James C. McManaway* and *J. Philip Clifford,* for plaintiff in error.

*Homer W. Williams, Carl W. Neff,* and *Melvin G. Sperry,* for defendants in error.

LYNCH, JUDGE:

George W. Wilson sued to recover damages for injuries sustained in a collision of an automobile in which he was riding with another operated by an agent of defendants, Boyd S. Fleming and Lloyd W. Groves, doing business as Auto Livery Company. The trial court having set aside as excessive

a verdict for $6,000.00, plaintiff brings the case here for review.

At the time of the accident, Wilson in company with Claude Maxwell and two men named Williams were driving from Clarksburg on the West Milford turnpike, their purpose being to examine some standing timber, which plaintiff proposed cutting for Maxwell. The machine in which they were riding had originally been a five passenger touring car, but prior to the accident was converted into a light truck, the body and top having been removed, and a wooden truck body and two bucket seats substituted. Maxwell, the owner and driver, occupied one of these seats and plaintiff the other, the two Williams brothers being seated on the gasoline tank at the rear end of the truck body.

The collision occurred at a sharp turn in the highway, at a point, where, because of a high bank neither driver could see a great distance ahead. The evidence is contradictory as to which, if either, of the drivers was at fault. Maxwell and his companions testify that they were as near the right edge of the road as safety in making the turn would permit, and that their speed could not have been more than eight to ten miles per hour, that defendants' car negligently cut in towards them when the automobiles were but a few feet apart and that it crashed into them at a speed of from 20 to 30 miles an hour. Defendants, on the other hand, insist with equal emphasis that Maxwell's car was not in a condition to be driven upon the highway, and in fact was so much of a wreck that even its appearance was notice to a passenger of its unsafe condition, that their driver, not Maxwell, was driving at a moderate rate of speed, about twelve miles per hour, when Maxwell "whipped the car around the corner," when it was too late to avoid the accident by driving between Maxwell's car and the bank on their right.

However contradictory the testimony as to the negligence of the drivers may appear to be, the car in which plaintiff was riding was damaged by the impact and plaintiff was thrown violently to the ground, thereby sustaining injuries more or less severe, and for which the jury compensated him

in an amount which the trial court deemed excessive and un-warranted by the evidence.

As upon this point, the case is to be considered and de-termined it is necessary to dwell upon the injuries sustained by plaintiff.    Immediately following the collision, he ''seem-ed to be doing an awful lot of complaining about his breath-ing.   He could not hardly get his breath, and when he did get it he hollowed.''    Some one assisted him in walking to a nearby house, and shortly afterward carried him in another automobile to the hospital in Clarksburg.    There an exami-nation by Dr. Haynes, a witness in the case for plaintiff, dis-closed that ''He had a fracture of one or more ribs, the upper part of the left side of his chest * * * and lung tissue evi-dently had been punctured by the ribs more or less at least, and (he) coughed and spit up blood, as I recollect it.''  His lungs were congested within a few hours after the accident and in a day or two he developed pneumonia, with a tempera-ture of one hundred four and one-half.    After eight or nine days in the hospital he removed to a hotel where he remained an additional two weeks, still under the care of a physician, at the expiration of which time he was so far recovered as to permit of his return to his home in Richwood.    There he re-sided one week, after which, with his wife and two children, he removed to the farm of Claude Maxwell near Clarksburg. This was in the fall of 1916 and he continued at  Maxwell's throughout the winter, or, according to Maxwell, until corn planting time.    During this period he did light work at in-tervals, feeding cattle, husking corn, etc., but the chief value of his presence, if we may credit Maxwell, arose from the service of plaintiff's wife, who cooked for other employees upon the premises.    Subsequent to his residence on Max-well's farm, plaintiff's place of abode and ability to work are disputed.    That he did little, however, seems fairly well es-tablished, but whether this abstinence was due, as he claims, to physical disability produced by the accident, or as de-fendants allege, to natural aversion and indisposition to work, the evidence is inconclusive.

Assuming, however, that his inactivity was the result of the injuries, was not the verdict an inordinate amount?    It

was shown in the proof that the plaintiff, prior to this collision was accustomed to receive a wage of $50.00 to $60.00 per month.    At this rate, the impairment of his earning capacity during the three years between the date of the accident and the trial could not have caused him a loss of more than $2,-200.00.    What then as to the balance of the jury's verdict? True, one injured by the fault of another is entitled to some recompense for suffering and inconvenience, but the facts warrant no such finding on that account.    There is, as we see it, but one explanation, that is, that there was an attempt to compensate plaintiff for injuries believed by the jury to be of a permanent character.    Can such belief be supported by any proper construction of the facts?

At this point, and before answering the query, it is proper to recall the doctrine long since recognized by this and other courts, that an order setting aside a verdict is entitled to peculiar respect.    *Miller* v. *Insurance Co.,* 12 W. Va. 116; *Black* v. *Thomas,* 21 W. Va. 709; *Reynolds* v. *Tompkins,* 23 W. Va. 229; *Coalmer* v. *Barrett,* 61 W. Va. 237.    As it is the province of the trial court alone to view the appearance and conduct of the jurors, parties and witnesses in the trial, the soundness of the above rule is obvious.    See *Shipley* v. *Virginian Ry. Co.,* 87 W. Va. 139, 104 S. E. 297.    In view of this well established practice it is therefore necessary in reaching our conclusion to respect the order of the trial court.

Analysis of the evidence as to the effect of the injury upon plaintiff's physical condition suggests that plaintiff probably relied largely upon the answers to two questions, one directed to Dr. Wilson, and the other to Dr. Haynes.    The first of these elicited information as to whether the impairment of the lung tissue was permanent; the answer to which was ''I should think so, it has existed now for about nine months, according to my (X-ray) pictures,'' the other, directed to Dr. Haynes, was: ''Do you consider this plaintiff so disabled and so inflicted with tuberculosis as that he is unable to work?''    The answer was: ''I have seen people working that has more tuberculosis than he has, but I do not consider him able to take a hard job and keep it.''

The latter opinion, though frank, is of little consequence.

The tuberculosis with which it was testified plaintiff was afflicted at the time of the trial was of the kind characterized by the physician as "latent," a malady not uncommon amongst "a great majority of people daily seen on the street." That its existence was the result of the injuries of which plaintiff complains is conjectural. The disease may in some instances be caused by injuries to the lung tissues, such as plaintiff is alleged to have suffered, but whether such was actually the case here it is not proper to hazard a guess. While at the time of the accident he "looked to be a man of good nutrition and muscular" and "better nourished" than at the date of the trial, there is nothing to enlighten us as to the existence or non-existence of the disease, later discovered to be present. The evidence, therefore, is insufficient to establish a causal connection between the collision and the subsequent tubercular inoculation.

As Dr. Wilson's examination of plaintiff was admittedly superficial, his opinion that the impairment of the lung tissues was of a permanent character must have been, as he says, predicated upon the continuation of the condition, as shown by his x-ray pictures, the first taken in January, 1919, and the second in the next ensuing September, a few days prior to the trial. The testimony of the two expert witnesses, Drs. Wilson and Haynes, and especially that of the former, was speculative and uncertain in quality, due no doubt to the meagre opportunity to acquaint himself with plaintiff's condition three years after the date of the injury. If he and Dr. Haynes, two competent physicians and surgeons, were unable after a treatment by one of them, and a more or less casual examination by the other, to discover an immediate connection between the injury and a disqualification of a permanent character to perform labor such as plaintiff had been able to perform before the injury, how could the jury reach such a conclusion as would warrant a verdict for permanent injuries, based solely upon the expert evidence? These witnesses exhibited on their examination commendable caution, qualifying their answers when pressed to express in positive terms their convictions as to the cause and probable continuation and growth of the tubercular infection. Their

silence as to the extent the impaired condition of the lung tissues would or might affect the plaintiff's health or earning power is suggestive. This omission when considered with other testimony seems insufficient to establish even an approximate conception of an enduring disqualification for manual labor, and therefore sufficient to sustain the trial court's action upon defendant's motion for another trial.

According to an abundance of authority "the future effect of an injury upon the earning capacity of the person injured must be shown with reasonable certainty to authorize a recovery of damages for a permanent injury. A mere conjecture or even a probability does not warrant the giving of damages for a future disability which may never be realized." *Louisville Sou. Ry. Co.* v. *Minogue*, 90 Ky. 369, 14 S. W. 357, 29 A. S. R. 378; *Missouri Pac. Ry Co.* v. *Mitchel*, 75 Tex. 78; *Block* v. *Milwaukee Street Ry. Co.*, 89 Wis. 371, 61 N. W. 1101, 46 A. S. R. 849, 27 L. R. A. 365; *Chicago etc. Ry. Co.* v. *Lindeman*, 143 Fed. 946; *Howard* v. *Beldenville L. Co.*, 129 Wis. 98; *St. Louis etc. Ry. Co.* v. *Bird*, 106 Ark. 177; *Breen* v. *Iowa Cent. Ry. Co.*, 159 Ia. 537; *Marshall* v. *Wabash Ry. Co.*, 171 Mich. 180; *United R. & E. Co.* v. *Dean*, 117 Md. 686; *Allen* v. *St. Louis & S. F. Ry. Co.*, 184 Mo. App. 492; *Ongaro* v. *Twohy*, 49 Wash. 93; *Filer* v. *N. Y. C. Ry. Co.*, 49 N. Y. 42; *Chicago, R. I. & P. Co.* v. *McDowell*, 66 Neb. 170,. 92 N. W. 121; *McBride* v. *St. Paul City Ry. Co.*, 72 Minn. 291, 75 N. W. 231; *Ford* v. *City of Des Moines*, 106 Ia. 94; *Ohio & Miss. Ry. Co.* v. *Cosby et al.*, 107 Ind. 32; *Chicago & N. W. Ry. Co.* v. *DeClow*, 124 Fed. 142.

Testimony as to what might happen as the result of an accident is not competent, *Briggs* v. *New York Etc. Ry. Co.*, 177 N. Y. 59; 15 Am. Neg. Rep. 396, 101 A. S. R. 718. That plaintiff *may* suffer as a consequence of an accident is too broad as a basis of a recovery as for a permanent injury, *Melone* v. *Sierra Ry. Co.*, 151 Cal. 113; as he may be "liable to suffer," *Green* v. *Catawba P. Co.*, 75 S. C. 102. Reasonable certainty that future pain and suffering or loss of capacity to work will follow, must be proved to warrant a verdict based on injuries of a permanent character. *Great Western Ry. Co.* v. *Bailey*, 9 Kan. App. 207, 59 Pac. 659;

*Hardy* v. *Milwaukee Street Ry. Co.,* 89 Wis. 183, 7 Am. Neg.
Cas. 283; *Sanders* v. *O'Callaghan,* 111 Ia. 574; *Hall* v. *Cedar Rapids etc. Ry. Co.,* 115 Ia. 18.

"Future consequences, which are reasonably expected to follow an injury, may be given in evidence for the purpose of enhancing the damages to be awarded.    But to entitle such apprehended consequences to be considered by the jury, they must be such as in the ordinary course of nature are reasonably certain to ensue.    Consequences which are contingent, speculative, or merely possible, are not proper to be considered in ascertaining the damages * * * To entitle a plaintiff to recover present damages for apprehended future consequences, there must be such a degree of probability of their occurring, as amounts to a reasonable certainty  that they will result from the original injury."    Sedgwick, Damages (9th. Ed.) Sec. 172, citing *Strohm* v. *New York L. E. & W. Ry. Co.,* 96 N. Y. 305.

As one of several cross-errors assigned by defendants, they urge that the court erred in refusing certain evidence as to the condition of Maxwell's automobile.    This evidence consisted of testimony relative to the presence and condition of such equipment as fenders, dashboard, cutout   valve, fan, lights, horn, speedometer, springs, etc., apparatus with which automobiles are generally equipped.    In view of the court's actual rulings on the admission of the testimony, we regard this contention as unfounded.    True, certain statements concerning the absence or defective condition of some of the parts mentioned were excluded, but as it was not shown in what way, if any, their presence or absence was of importance so far as the collision was concerned, we see no error in their rejection.    As it is well known that the external appearance of an automobile is a very uncertain test of its running condition, defendants' theory of imputed negligence has little application.    The court did admit the testimony of Harris as to the condition of the brakes and springs, insofar as the operating of the car was affected thereby, and granted defendant express permission to recall plaintiff's witnesses and question them on the subject, which opportunity had formerly in part been denied.    While not detailing each of

the points raised, we are not of opinion to disturb the court's rulings on this line of the evidence.    If, however, it shall appear upon a retrial of the case that there is some causal relation between the infliction of the injury and the condition of the Maxwell automobile, as affecting the power of the driver to control it or to give the required warning of its approach, its condition may properly become a subject of proof. Such an instrument when driven, as often they are, with a reckless disregard of the rights of others lawfully on a highway, is a source of grave danger.

Defendants further insist upon their claim of right to introduce evidence tending to show Maxwell's reputation as a reckless driver.    That evidence of this character is incompetent is so well established as to admit of little comment. Evidence of negligence on former occasions is inadmissible for the purpose of proving whether a person did or did not do a particular act in question.    *Pugsley* v. *Tyler,* 130 Ark. 491, 197 S. W. 1177; *Luiz* v. *Falvey,* 228 Mass. 253, 117 N. E. 308; *Todd* v. *Chicago City Ry. Co.,* 197 Ill. App. 544; *Noonan* v *Maus,* 197 Ill. App. 103; *Louisville Lozier Co.* v. *Sallee,* 167 Ky. 499, 180 S. W. 481; 22 C. J. 749, Title, ''Evidence,'' Sec. 838, note 66.    In all of the cases cited, the testimony in question related to the customary conduct of automobile drivers in regard to their observance of various rules of prudent driving, and in all of them the appellate courts discountenanced such evidence, insofar as its bearing upon a particular act was concerned.

Defendants also charge as error the rejection by the trial court of the evidence of Frank M. Powell, who testified that he, also driving an automobile, passed the Maxwell car about one-half mile from the place of the accident, at which time Maxwell either ''could not steer it very good or it was a big car going around the turn there and he ran pretty close to the Ford in which I was riding, and he was running at I would not like to say right now, I suppose thirty miles an hour * * *.''    This testimony having been heard in the  jury's absence, the court excluded it as irrelevant.

This ruling deserves and requires    more than    passing scrutiny.    While the fact, if fact it be, that Maxwell was

driving in a dangerous manner or at an excessive rate of speed, while a half mile distant from the scene of the collision, does not prove, or indeed create a presumption of, the fact that he was driving in a similar way when the accident occurred, nevertheless the inference which the jury might properly have drawn from such conduct is of sufficient probative value to justify its admission. *Davies* v. *Barnes,* 201 Ala. 120, 77 So. 612; *Wigginton's Admr.* v. *Rickert,* 186 Ky. 650, 217 S. W. 933. As there was evidence. also that Maxwell's car was driving very rapidly when the cars collided, the relevancy of the testimony becomes more apparent. *Tyrrell* v. *Goslan,* 93 Vt. 63, 106 Atl. 585; *Wellman* v. *Mead,* 93 Vt. 322, 107 Atl. 396. See also, *Portsmouth Street Ry. Co.* v. *Peed,* 102 Va. 662, 47 S. E. 850 and *Hilary* v. *Minneapolis Street Ry. Co.,* 104 Minn. 432, 116 N. W. 933. Although questions as to the remoteness or relevancy of testimony are generally within the trial court's discretion, there are instances where the circumstances are such that the act in question, while perhaps somewhat remote, is not sufficiently irrelevant to render it inadmissible as a matter of law, and it may have such probative value and legal relevancy that the inferences which may be drawn therefrom are clearly proper for the jury. Evidence which tends ''in an appreciable degree to sustain a material issue of facts'' is admissible, *Lyons* v. *Fairmont Real Estate Co.,* 71 W. Va. 754, and ''the safer and more satisfactory rule is for the court to admit whatever is relevant and leave the question of weight for the jury.'' *State* v. *Yates,* 21 W. Va. 761. The testimony given by Powell as to the operation of the automobile only a few minutes before the collision was pertinent and admissible under the circumstances proved.

Among other cross-assignments of error is the adverse ruling of the trial court upon defendants' motion to dismiss the action, because the plaintiff failed to file the declaration within three months after the return of the process executed as required by section 7, chapter 125, Code, under penalty of dismissal if not so filed in the office of the court's clerk within that time. The sheriff served the process soon after it was issued, and returned it on March 5, 1917, or the first Mon-

day of that month.    Plaintiff delivered the declaration to the clerk, and the clerk filed it at the rules held June 4, 5, and 6. As the process was by its command returnable to March rules it was necessary to return it on the first rule day, or March 5.    To ascertain the termination of the three months period, within which a declaration must be filed, or the action dismissed at rules by the clerk, the number of days in the intervening months or part of a month is to be disregarded, and the time is to be computed from a date in one month to a corresponding date in another, intended by the statute.    *Bank* v. *Baird*, 72 W. Va. 716.    As the clerk did not dismiss the suit as he should have done had the declaration not been filed in obedience to the direction of the section, it must be assumed that he filed it on June 4, the presumption being that a public officer discharges the duties required of him by statute. The court did not err in the ruling.

Another cross-assignment questions the action of the court upon instructions.    These we can not consider because they are not in the record, and not made part of it by a bill of exception, and section 23, chapter 131, Code 1918, as amended by chapter 68, Acts, 1921, even if applicable, not being in force when the case was tried.

Finally, the defendants cross-assign as erroneous the refusal to permit an answer to a question propounded to Claude. Maxwell to elicit information as to a release by plaintiff of his claim for damages as a result of the accident.    Without an avowal of the purport of the answer contemplated it does not appear whether the proponents were prejudiced by the ruling.

As there appears to be no error in the judgment it is affirmed and the case is remanded for retrial.

*Affirmed and remanded.*